Reiter *v.* Garman, Appellant.

Argued March 18, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*George M. Meyers,* for appellant.—The claimant was an employee of an independent contractor: McColligan v. Pa. R. R. Co., 214 Pa. 229; Eckert v. Mer. S. Corp., 280 Pa. 348; Simonton v. Morton, 275 Pa. 562.

*John M. Klepser,* for appellee.

OPINION BY KELLER, J., November 23, 1932:

The claimant was injured in the course of his employment as a bituminous coal miner. The referee refused to award compensation on the ground that the claimant was not an employee of the defendant, but had been hired by one John Pendrock, who had a contract with defendant to mine coal, for which he received $1.20 a ton, out of which he paid claimant. On appeal, the board reversed the referee and found that defendant was the owner or lessee of the mine in question, and in control of its operation; that Pendrock was simply a contract miner working for the defendant at the time of the accident on a per ton basis, authorized to secure laborers to assist him; and awarded compensation. On appeal the court of common pleas of Blair County affirmed the board and entered judgment for the claimant.

While the referee, in his order disallowing compensation, did not find, in so many words, that Pendrock was an "independent contractor," that is what, in effect, his finding amounted to. In passing upon this question, the board stated that in its view the exact relationship between the parties, whether as principal and contractor, or employer and foreman, was not of controlling importance; that, whatever the relation-

ship, the case fell within the provisions of section 302 (b) of the Workmen's Compensation Act. It is but fair to the board to state that its opinion was filed on April 27, 1925, long before the decision of the Supreme Court in McDonald v. Levinson Steel Co., 302 Pa. 287, (November 24, 1930), 153 Atl. 424, which construed section 302 (b) of the act. Even so, the decision in that case must be construed in the light of its facts. The *regular business* of the Levinson Steel Company was the manufacture of steel, not the erection of buildings in which to manufacture steel. The erection of steel-work used for building was the *regular business* of the contractor engaged in constructing the steelwork for the new building, and it was held that the employee of this contractor was not an employee of the steel company, within the meaning of section 302 (b). Its facts do not exactly apply to the employee of one who contracts to do a part of the employer's *regular business;* as for example, if the Levinson Steel Company had contracted with A to do, in its plant, one of its regular processes or operations in the manufacture of steel, and an employee of A had been hurt while working on that operation; or if a railroad company would contract with B to shift its engines and cars in one of its yards and one of B's employees should be hurt while engaged in such shifting. See Qualp v. James Stewart Co., 266 Pa. 502, 109 Atl. 780. Irrespective of this point, however, the board did find sufficient facts to justify an award against the defendant apart from the effect to be given section 302 (b) of the act.

The mining operation seems to have employed less than ten men. Apparently the only persons working were the claimant, and Pendrock, who worked with him as a "buddy," and one Migelich. It was therefore not within the provisions of the Bituminous Mine Code of June 9, 1911, P. L. 756. See Art. XXVIII, sec. 3. But the same general rules which are applied in the construction of employment contracts in larger

mines should be here applied too. Unlike the Anthracite Mine Code, (Act of June 2, 1891, P. L. 176, as amended by Act of June 1, 1915, P. L. 712, Art. 18), the Bituminous Mine Code makes no provision for or reference to a "contractor for the working of a mine, or colliery or part or district thereof." It speaks only of the "operator," who is defined as "any firm, corporation or individual operating any coal mine, or any part thereof." The duty of enforcing the provisions of the law, looking to the safety of those working in the mines, is placed on the operator, in conjunction with the superintendent, if there is one, the mine foreman and the mine inspector. The operator is not permitted to carry on his business just as he sees fit, and without supervision and regulation. The law of bituminous coal mining provides otherwise for the safety of those employed at this dangerous work; and it may be questioned whether it contemplates the operator's ridding himself of liability to his employees by the device of an independent contractor.

It is not unusual, in mining coal, for a man, who is qualified to act as a miner, to contract to mine and load coal from a working on cars furnished by the operator at a fixed price per ton, out of which he pays those who work with or assist him at such labor. He is commonly known as a "contract miner," but he and those working with him are regarded as employees of the operator, within the meaning of the Workmen's Compensation Act. See Gima v. Hudson Coal Co., 106 Pa. Superior Ct. 288, 161 Atl. 903, 904. It is in this sense that we understand the finding of the board that "Pendrock was simply a contract miner." The Supreme Court has construed the Anthracite Mine Code, since its amendment of 1915, supra, and held that a "rock contractor" under a written contract which placed the supervision and control of the work under the "mine foreman," who is therein made the agent of the "operator," is an employee of the operator

within the provisions of the Workmen's Compensation Law: Kelley v. D. L. & W. R. Co., 270 Pa. 426, 113 Atl. 419; and while this is not strictly applicable to bituminous mines it is helpful in the construction of employment contracts in those mines.

The contract in this case was not in writing, but oral. The evidence relating to it was meager. There was, we think, however, evidence to sustain the board's findings and the conclusions based thereon. While defendant sought to escape liability, he admitted that he was at the time of the accident "in control of the mine" (p. 34-a); and Pendrock testified that he himself "acted as a contract miner" (37-a). We are not convinced that the evidence requires at our hands a legal conclusion in reversal of the action of the board, as affirmed by the court. See Gailey v. State Workmen's Ins. Fund, 286 Pa. 311, 133 Atl. 498, where a somewhat similar situation existed, and was held not to constitute an independent contract.

We think that the objection, raised in this court for the first time, that the claimant's appeal to the board was not filed in time is too late. The referee's order of disallowance was filed on January 20, 1925. The docket entries show that a "Copy was mailed to *counsel of record*," (although the record shows no counsel appeared for either party at the hearing), on January 21, 1925. The appeal was filed by claimant on February 5, 1925. Had objection then been made to the fact that the appeal had not been taken within ten days after "notice of the referee's disallowance of compensation had been served on him," the claimant might have been able to prove—especially in view of the anomalous record above mentioned—that he did not receive the referee's order until on or after January 26th. After waiting over six years to raise the question we shall assume that it was not raised at the

time because the parties were satisfied that the appeal, under the facts, was in time.

The assignments of error are overruled and the judgment is affirmed.