# Qualp *v.* James Stewart Co., Inc., et al., Appellants.

*Workmen's compensation—Employers—Subcontractors—Second subcontractor's employees—Act of June 2, 1915, P. L. 736, Article III, Section 302 (b)—Notice.*

1. The employee of a second subcontractor is an employee of the general contractor within the meaning of article III of the Workmen's Compensation Act of June 2, 1915. The act did not intend to limit the "hiring a laborer" to a "contractor" standing in immediate contractual relation with the employer (original contractor); it intended to include those laborers or employees who did work in furtherance of the employer's business, and who were em-

ployed by one having a lawful right or duty to engage in the business undertaken by the employer.

2. The relation of employer to those employed about the premises includes only those whose work is a part of that embraced within the terms of the employer's contract with the owner.

3. A stranger without lawful authority from or through the employer (original contractor) could not force himself into a position where the employer would be held for compensation liability to his (the stranger's) employees. He must be entrusted with the work by one who had the right to so entrust him, and this right has been so broadened by the terms of the act as to exclude some of the ordinary rules of master and servant, principal and agent, contractor and contractee, as applied and understood at common law.

4. If the original contractor desired to protect himself from liability, he could have done so by posting notices or by providing for compensation liability in his subcontract. Failing to do so, he became, by the clear intendment of the act, liable to the employees of the second subcontractor.

5. The act intended to throw the burden on the man who secured the original contract from the owner, to the end that employees of any degree doing work thereunder, might always be protected in compensation claims.

6. Article II, sec. 203; art. III, sec. 302, and art. III, sec. 302b, of the Workmen's Compensation Act, read in connection, indicate a legislative intent to hold the original contractor for compensation liability to the employees of at least a second subcontractor.

7. In determining liability under the Workmen's Compensation Law, the courts must be guided by the clear intendment of the act as expressed by the words and definitions there used; if prior judicial decisions tend to limit or curtail the effect of words and phrases that are used with a certain meaning defined by the act, the legal rule announced by such decisions must give way to what the lawmaking body prescribed the use and meaning of the words to be. Such action within the legislative authority must control.

8. An award of compensation for the death of a workman will be sustained, where the referee finds that a general contractor for the construction of a building entered into a contract with a subcontractor by which the latter was to perform a portion of the work; that the subcontractor entered into a contract with a second subcontractor by which the latter undertook to perform the same work according to the plans and specifications furnished by the original contractor; that the deceased workman was an employee of the second subcontractor and was killed in the course of his employment; that the general contractor, a corporation, did not post the

notices required under the Workmen's Compensation Act limiting their liability; that it had control over the building where the deceased was at work; that neither the general contractor nor the subcontractor had control over the employees of the second subcontractor, but both were interested in securing completion of the work in accordance with the plans and specifications; that the work performed by the second subcontractor was a part of the regular business of the general contractor; and that it did not appear that the general contractor knew of the contract between the subcontractor and the second subcontractor.

*Constitutional law—Title of act—Notice—Index — Workmen's compensation—Use of word "employer" in title—Act of June 2, 1915, P. L. 736.*

9. The Act of June 2, 1915, P. L. 736, entitled "An act defining the liability of an employer to pay damages for injuries received by an employee in the course of employment; establishing an elective schedule of compensation; and providing procedure for the determination of liability and compensation thereunder," is sufficient in its title to indicate the liability of an original contractor to pay damages for injuries to employees of a second subcontractor. The act is not unconstitutional in so far as its title is concerned.

10. When the word "employer" was used in the title, and the title further indicated he was to pay damages on a fixed schedule to his employee for injuries received in the course of his employment, any one in the position of an employer, would seek, in the act, information as to the extent of his liability, and he would there find that under certain conditions an original contractor was an employer to the employees of a subcontractor.

11. The title to an act need not be an index of its contents. If the title contains words which would lead the ordinarily inquiring mind to an investigation of their purport, as set forth in the act, the title will be sufficient to embody such provisions as naturally relate to the language used.

Argued January 5, 1920. Appeal, No. 16, Jan. T., 1920, by defendants, from order of C. P. No. 4, Phila. Co., Sept. T., 1918, No. 1179, affirming decision of Workmen's Compensation Board, which affirmed an award by the referee for claimant, in case of Lucy Qualp v. James Stewart Co., Inc., defendant, and Travelers Insurance Co., insurer. Before BROWN, C. J., FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Appeal from decision of Workmen's Compensation Board sustaining award of referee for compensation for the death of John Qualp, claimant's husband.   Before CARR, J.

The court affirmed the decision of the board and dismissed the appeal.   Defendants appealed.

*Error assigned* was dismissal of appeal from board.

*Benjamin O. Frick,* with him *Prichard, Saul, Bayard & Evans,* for appellants.—Appellee's remedy for compensation is against Wolfarth & Greenfield, the employers of the decedent: McColligan v. Penna. R. R., 214 Pa. 229.

James Stewart Co. was not an employer under section 302 (b) : Smith v. State Workmen's Ins. Fund, 262 Pa. 286.

Wolfarth & Greenfield were not an "employee or contractor" under that section, and therefore appellee's decedent was not "a laborer or assistant hired by an employee or contractor."

The construction adopted by the court below would render section 302 (b) unconstitutional: Road in Phœnixville, 109 Pa. 44; Hatfield v. Com., 120 Pa. 395; Pierrie v. Phila., 139 Pa. 573; Quinn v. Cumberland Co., 162 Pa. 55; Phila. v. Ridge Ave. Ry., 142 Pa. 484; Provident Life & Trust Co. v. Hammond, 230 Pa. 407; Fedorowicz v. Brobst, 254 Pa. 338; Co. Comr's Petition, 255 Pa. 88; Union Passenger Ry. Co.'s App., 81½ Pa. 91.

*Arthur T. Porteous,* for appellee.—The compensation board of this State has uniformly held that under facts similar to the case at bar the principal contractor and not the subcontractor is liable: Rinne v. West Va. Lumber Co., 4 Dep. Rep. 1379.   See also Kings's Case, 220 Mass. 290; White v. Fuller, 226 Mass. 1; Comford's Case, 229 Mass. 573.

OPINION BY MR. JUSTICE KEPHART, March 8, 1920:

Do the facts as found by the referee under the law sustain the allowance of the award? is the only question raised by this appeal.

James Stewart Co., Inc., made a contract with one Hibbs to perform the work covered by his contract with the owner, according to plans and specifications furnished by the Stewart Co. Hibbs in turn made an agreement with Wolfarth & Greenfield to perform the same work according to the same plans and specifications. A laborer employed by Wolfarth & Greenfield died from an injury received during the course of his employment. His widow claimed and was allowed compensation from the Stewart Co., the original contractor; which the compensation board and the court below refused to disturb; the Stewart Co. and its insurer appeal. The referee found, in addition to the foregoing facts, that the work performed upon the premises was a part of the regular business of the Stewart Co., and it had control over that part of the building where the work was being performed by the second contractor. This company had no control over the employees of Wolfarth & Greenfield, nor had Hibbs, the intermediate subcontractor. Both were interested in securing completion of the work in accordance with the plans and specifications. It does not appear the Stewart Co. knew of the subcontract to Wolfarth & Greenfield.

Appellants resist the claim for the reasons: (1st) that it was not an employer under section 302 (b) of the Act of June 2, 1915, P. L. 736; (2d) Wolfarth & Greenfield was not a "contractor" and claimant's husband was not "a laborer hired by an employee or contractor" under the foregoing section; (3d) to hold otherwise would render section 302 (b) unconstitutional.

In determining liability under the Workmen's Compensation Law, we must be guided by the clear intendment of the act as expressed by the words and definitions there used; if prior judicial decisions tend to limit or

curtail the effect of words and phrases that are used with a certain meaning defined by the act, the legal rule announced by such decisions must give way to what the lawmaking body prescribed the use and meaning of the words to be. Such action within the legislative authority must control. Section 302 (b) of article III reads: "After December 31, 1915, an employer who permits the entry, upon premises occupied by him or under his control, of a laborer or an assistant hired by an employee or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to that employee or contractor, shall be conclusively presumed to have agreed to pay to such laborer or assistant compensation in accordance with the provisions of article III."

The Stewart Co., as original contractor in control of the premises to perform the work it had engaged to do, is regarded by the Workmen's Compensation Law as the employer to those engaged on or about work within the scope of the undertaking. It was the first, so far as claimant is concerned, to assume charge of the premises and to agree to do the work looking to at least a partial completion of the structure or enterprise as contemplated by the owner. This relation of employer to those employed about the premises includes only those whose work is a part of that embraced within the terms of the employer's contract with the owner. The work of a contractor, on the same premises, in furtherance of the owner's general plan, on the same structure or enterprise, performing under another and different contract with the owner, is, as to the person under consideration, the work of an independent contractor under the law, and his employees or those under him must look to him for compensation. Each is separate and distinct, operating within his own sphere, though engaged on the same general work.

The claimant, a laborer on the premises under the employer's control, was engaged by a contractor to do a

part of the work undertaken by the original contractor; this work was a part of the employer's regular business, made so by his contract with the owner.

The work so performed by the laborer was intrusted by the original contractor to a contractor ordinarily known as a subcontractor, who, by the terms of the act, is included in the designation "contractor." He is a subcontractor because his contract is subordinate to and under the principal contract, though in the business world he may be independent; but as regards this transaction his contract is a dependent one wherein he agrees to do all or a part of that which another has agreed to do. This subcontractor in turn "entrusted" the same work to another "contractor" (a second subcontractor) who employed claimant. The essential consideration is, that the work of the original contractor, to be performed under his contract, was entrusted to a contractor (a subcontractor being under this designation), to be carried out as part of the original contractor's regular business. The act did not intend to limit the "hiring a laborer" to a "contractor" standing in immediate contractual relation with the employer (original contractor); it intended to include those laborers or employees who did work in furtherance of the employer's business, who were employed by any one having a lawful right or duty to engage in the business undertaking by the employer; the section of the act reads, in substance, an employer who permits, upon premises under his control, a laborer hired by a contractor for the performance of a part of the employer's regular business entrusted to that contractor. Certainly a stranger, without lawful authority from or through the employer (original contractor), could not force himself into a position where the employer would be held for compensation liability to his (the stranger's) employees. He must be entrusted with the work by one who had the right to so entrust him, and this right has been so broadened by the terms of the act as to exclude some of the ordinary rules of master and servant, prin-

cipal and agent, contractor and contractee, as applied and understood at common law.

The power was placed in the employer's subcontractor to make another subcontract, and thus further entrusted the performance, on the premises, of a part of the employer's regular business that had been delegated by the employer to that subcontractor. The employer, through his failure to take advantage of the exemption allowed by the act, made it possible to create the condition which actually followed. Unless the precaution provided by law was taken, employees of the second subcontractor would stand in the same relation to the original contractor as employees of the first subcontractor. The employer could have prevented this by posting notices or by providing for compensation liability in his subcontract, in the event of a second subcontract. Without the employer's knowledge and because of his failure to protect himself, a second contract was made which, by the clear intendment of the act, brought the employees of the second subcontractor under or within the compensation liability of the original contractor. The reason for the rule is plain. The legislature wanted to definitely fix some responsible party with the obligation of paying compensation to injured workmen, and the party selected was the first whose duty it was to assume control of the work. It selected the first in succession from the owner, believing the owner would contract with none but responsible persons. He was the first in the field and in the contracting scheme of work, the head of the endeavor, the person to whom an employee would naturally look. This liability may be avoided, but it must be done in the way pointed out by the act, and of this the employee must have notice. No unfair dealing can thus arise. The act intended to throw the burden on the man who secured the original contract from the owner to the end that employees of any degree doing work thereunder might always be protected in compensation claims.

Section 105, P. L. 737, provides that the term "contractor" as used in article II, section 203, and article III, section 302, shall not include a contractor engaged in an independent business, other than that of supplying laborers or assistants, in which he serves persons not the employer in whose service the accident occurs, but shall include a subcontractor to whom a principal contractor has sublet any part of the work which such principal contractor has undertaken. This, in connection with 302 (b), quoted and discussed, and the latter clause of section 302 (b), which reads, "It shall not be in effect between the intermediate employer or contractor and such laborer or assistant, unless otherwise expressly agreed," indicates legislative intention to hold the original contractor for compensation liability to the employees of at least a second subcontractor.

We have repeatedly said that the title to an act need not be an index of its contents. If the title contains words which would lead the ordinarily inquiring mind to an investigation of their purport as set forth in the act, the title will be sufficient to embody such provisions as naturally relate to the language used. When the word "employer" was used in the title, and it further indicated he was to pay damages on a fixed schedule to his employee for injuries received in the course of employment, any one in the position of an employer would seek in the act information as to the extent of this liability. He would there find under certain conditions an original contractor was an employer to the employees of a subcontractor. The title gives notice of the purpose of the legislation by the simple form of the expression used, which is so broad and comprehensive as to include the various conditions dealt with in the act.

The judgment is affirmed.