## McDonald, Appellant, *v.* Levinson Steel Co.

Argued October 7, 1930. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*C. J. Tannehill,* with him *Esther I. Katten,* for appellant.

*A. L. Weil* of *Weil, Christy & Weil,* with him *Dickie, Kier & McCamey,* for appellee.

OPINION BY MR. JUSTICE KEPHART, November 24, 1930:

The Levinson Company, hereinafter called Levinson, was erecting a steel crane shed for its own occupancy on ground that was in its possession under a lease. It contracted with Uhl for the construction of the steel work, Dunn for the concrete piers, and a third party for the roofing. While working on the steel structure, McDonald, an employee of Uhl, was injured due to the breaking of a concrete pier. Compensation was awarded to the employee through Uhl as employer under the Workmen's Compensation Act. McDonald then brought an action against Levinson for damages resulting from the injury, alleging neglect of duty in providing a defectively constructed pier on which Uhl's work was to be done: Gallivan v. Wark, 288 Pa. 443; Kelly v. Northampton, etc., Society, 286 Pa. 97. See Anderson v. London, etc., Co., 295 Pa. 368. The questions submitted to the jury were: (1) was the construction sufficiently strong to stand the stress and strain of the steel work to be erected, (2) was such construction built by Dunn according to Levinson's plans and specifications, and (3) did Levinson exercise due care in preparing such plans and specifications. The jury found for the plaintiff but the court below entered judgment n. o. v., holding Levinson an employer within the Compensation Act and not responsible in damages.

This appeal by McDonald presents an oft recurring difficulty. On the one hand we have persons before us,

such as Levinson, endeavoring to escape the effect of the Compensation Act so that they will not be compelled to pay compensation or carry insurance, and, on the other hand, as here, when faced with liability at common law, they strive vigorously to come under the sheltering protection of the act. Appellee is now endeavoring to do the latter as a statutory employer.

A statutory employer is a master who is not a contractual or common law one but is made one by the act. There is no difficulty in determining in most cases whether or not one is a statutory employer. The law has been fairly well settled by this court, and the zones of liability or nonliability rather well defined. There are cases, however, like the one before us, where no clear chart has been laid down, although many of the decisions are helpful. It will be better for the efficient administration of the Compensation Act to construe it literally as to the obligations created, leaving those under the common law that were apparently intended to be so, and under the Compensation Act those intended.

Levinson contends that he is not liable at common law but is a statutory employer for two reasons: first, because, in pursuit of his "regular business" of erecting steel buildings, he was constructing this shed as an owner for his use on leased ground or ground occupied by him and under his control and was doing everything a principal contractor would do, if the work had been let out to him, when the injury took place, and the Compensation Act did not intend to prohibit an owner from becoming a principal contractor in all cases; second, because of his lease he was a builder or principal contractor, subletting his various contracts and exercising supervision over the work, being paid by the lessor for the materials and services furnished by not being charged any additional rent; the building was the property of the owner-lessor at the end of the term.

Appellant urges that Levinson is liable at common law because an owner can never be a statutory employer

and Levinson was in the position of an owner; furthermore, to hold him under the Compensation Act would create confusion as to those lawfully and logically statutory employers, and also as to when owners should take out insurance.

The difficulty arises chiefly in determining who the legislature intended should be included within the class of statutory employers, as distinguished from master and servant at common law, which is taken care of elsewhere by the act. It depends on the construction of article I, section 105, article II, section 203, and article III, section 302 (b), of the Act of June 2, 1915, P. L. 736, which will be found in the report of this case. Section 302 (b) merely carries into effect section 203. Section 105 modified "contractor" in section 203 so as to exclude a contractor engaged in an independent business, or an independent contractor, but includes a subcontractor to whom a principal contractor has sublet part of the work. A "contractor" other than an "independent contractor" could mean nothing but a dependent or subcontractor. We know of no other classification of contractors in this connection than independent and subcontractors. Though contractors are often referred to as general, original, principal and independent, the sense here used indicates their relation to the work as dependent or independent. "Contractors" as used in section 105 is synonymous with "subcontractors" (Gallivan v. Wark, supra, and other cases); though, as stated in Qualp v. Stewart Co., 266 Pa. 502, subcontractors are still regarded as independent contractors under certain conditions.

As the term "contractor" as used in section 203 means subcontractor, or a contractor other than an independent one, then there must be a principal contract or one on which the subcontract is dependent since subcontractor presupposes a principal contract. Here again section 105 helps out for it describes the person in whom the principal contract is lodged as being the principal

contractor. "Employer" is the only other person named in section 203 in connection with "contractor" and the employer must be a party to the principal contract. Employer includes principal contractor, and as most generally used in sections 105 and 203 they must be regarded as synonymous: Qualp v. Stewart Co., supra.

If the term "employer" in section 203 means the owner or one in the position of owner, and a lessee is none the less in the position of an owner when he builds or erects for himself or for his own use a structure on the property leased, then the section would read: "an owner who permits on his premises employees hired by a subcontractor......shall be as to such employees a statutory employer." The owner would not be liable to the employees of an independent contractor since the act specifically excludes an owner from liability to the employees of an independent contractor (section 105 and section 203: Brooks v. Buckley & Banks, 291 Pa. 1; McGrath v. Sugar Co., 282 Pa. 265; Simonton v. Morton, 275 Pa. 562; Smith v. Insurance Co., 262 Pa. 286), but he would be liable to those of a subcontractor under such contractor. Such construction not only would create an arbitrary classification but also would lead to an impossible result. By holding that an owner is not a statutory employer and that employer and principal contractor are synonymous, these sections are workable.

As thus understood section 203 would read: "An employer [principal contractor] who permits the entry upon premises occupied by him or under his control of a laborer......hired by......a contractor [subcontractor], for the performance upon such premises of a part of the employer's [principal contractor's] regular business entrusted to......such contractor [subcontractor], shall be liable......in the same manner......as to his own employee." To create the relation of statutory employer under section 203 of the act, all of the following elements essential to a statutory employer's

liability must be present: (1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business entrusted to such subcontractor. (5) An employee of such subcontractor.

Levinson also bases his case on the provisions "for the performance......of a part of the employer's regular business" on "premises occupied by him or under his control," in order to be a statutory employer within the act. We may concede that the regular business of Levinson was constructing similar work for others, and he was an employer to his own employees. Further, the work was done on premises leased by him. However, the work under which the accident took place was that let to an independent contractor by Levinson as lessee-owner. Merely because the work is on his own property and is done in the course of his regular business does not bring him within the act: Brooks v. Buckley & Banks, supra; McGrath v. Sugar Co., supra; Simonton v. Morton, supra; Smith v. Insurance Co., supra. There must be a relation of principal contractor and subcontractor under him, and Levinson must be such principal contractor. He was a contractee but not such principal contractor or statutory employer; he was acting for himself; and Uhl was an independent contractor. An owner in erecting his own building, does so as an owner, not as a principal contractor or its synonym, "employer," although his regular course of business may be that of a builder: Brooks v. Buckley & Banks, supra; McGrath v. Sugar Co., supra; Simonton v. Morton, supra. (See note at bottom of page 296.)

The State, county or municipal authorities, for compensation purposes, are regarded much as business corporations. These are constantly letting contracts for the erection of public works, roads, etc. It would be inconceivable to suppose that the State was the principal

contractor responsible to the employee of its contractors and subcontractors under the Compensation Act; yet in all these undertakings the various municipalities are doing work in the course of their regular business on their own premises. They, as owners, are not principal contractors or employers under the act: Brooks v. Buckley & Banks, supra. Levinson cannot base his right as a statutory employer solely on the fact that he did a part of his regular business on premises occupied by him: Brooks v. Buckley & Banks, supra; McGrath v. Sugar Co., supra; Simonton v. Morton, supra; Smith v. Insurance Co., supra.

Where an owner contracts with another for work on his premises in furtherance of his regular business, the employment is an independent one, establishing the relation of contractee and contractor and not that of master and servant or statutory employer and employee, and a workman injured on that work is not entitled to com-

---

Note.—For illustration, suppose X, the owner of property, personally undertakes the erection of a building, as Levinson did, letting parts of the work to A and B; X does the rest of the work; A sublets part of his work to C. Reading this situation into section 203, the contracts made with A and B are independent and A and B are independent contractors: Brooks v. Buckley & Banks, supra; Smith v. Insurance, supra; McGrath v. Sugar Co., supra; Simonton v. Morton, supra. As to the premises, so much of X's premises necessary for the successful accomplishment of A and B's work are in the occupancy and under the control of A and B: Scalise v. Venzie & Co., Inc., et al., 301 Pa. 315, X does part of the work on the premises with them, but this does not take occupancy and control from A and B. As to his own employees, X is an employer under other sections of the act, but his relation to A, B and C would be the same as the relation of the contractors on the job to each other; McGrath v. Sugar Co., supra. As to B's employees, X is not a statutory employer, but is liable at common law: Brooks v. Buckley & Banks, supra; Kelly v. Northampton, etc., supra; McGrath v. Sugar Co., supra. As to the employees of C, a subcontractor, X is not a statutory employer but is liable at common law, but A is liable as a statutory employer: Gallivan v. Wark Co., supra; Swartz v. Conradis, 298 Pa. 343.

pensation from the owner as statutory employer or master unless the relation of master and servant is established by the contract reserving control over the means of accomplishing the work as well as over the result to be accomplished: Brooks v. Buckley & Banks, supra; McGrath v. Sugar Co., supra; Simonton v. Morton, supra; Smith v. Insurance Co., supra; Kelley v. Del., Lack., etc., R. R., 270 Pa. 426. The only contract we have in this case is the principal contract between Levinson and Uhl, in which Levinson is a contractee and Uhl is an independent not a subcontractor; there is no question of control or supervision such as would make Levinson a common law master to Uhl and his employees as servants, and as a result Levinson is not liable to McDonald for compensation under the act. Where an accident is caused by the active participation or instrumentality of a third party, a common law liability exists as to that party: Gallivan v. Wark, supra. Where the owner or some one in that relation is required to furnish something or to perform some act, such as to build a part of a structure on which to work, the duty is cast on the owner or other party to make it safe: Scalise v. Venzie & Co., Inc., 301 Pa. 315. For a violation of that duty an action at common law may be had against Levinson.

On the second question, that Levinson was a builder under the owner, the record shows that, on October 30, 1925, he leased from Toupet for ten years the land on which the crane shed was being erected. This lease provided that "The lessees are to remove no substantial important addition or improvement made by lessor or lessees, nor to materially alter the premises, nor to assign this lease voluntarily, nor to assign this lease involuntarily by judicial sale or otherwise, without written consent of the lessor, under penalty of instant forfeiture of this lease" and "it is mutually agreed that all important substantial alterations, additions or improvements to the building which may be made by either of the parties

hereto......shall be the property of the lessor and shall remain upon......the premises as a part thereof, at the termination of this lease."

Appellant in assuming this position must concede his claim must be based on a contract to build for the owner. It cannot arise merely from the fact that the building afterwards becomes the property of the owner and is then for his benefit. However, the above is the only authority or semblance of a contract to build which appellee produces to make Levinson a principal contractor with the owner; it did not require Levinson to build. To hold him as a principal contractor within sections 105 and 203, simply because such provisions appear in a lease, would make all lessees of property for a long or short term, who undertake building operations, responsible for injuries to the employees of contractors engaged thereon to do the work. A lessee, as to the work involved, is in the same position as an owner. The test of compensation is not actual ownership of the property. The legislature did not intend to base the rights of workmen on such condition. In short, it specified a principal contract requiring a principal contractor to accomplish a given result, with an "occupancy and/or control" through that contract as a necessary incident. Here there is no such contract to build for the lessor-owner. The lease merely specifies what shall happen in case a building is erected. The owner of premises may contract with his lessee to erect a structure, and in such case the lessee would be acting as an erector, builder or principal contractor and not as a lessee. But the lease in this case is not such a contract and so does not constitute such a relation as to make Levinson a principal contractor. The position of appellee is rather forced.

An analogous case is that of McGrath v. Sugar Co., supra, in which the latter was engaged in the business of refining sugar and had a contract with Atkins & Company to refine its sugar. It owned a pier where finished and raw product was loaded and unloaded from vessels

under its general supervision. Loveland & Company, a stevedoring concern, was obtained by contract to do this work and paid on a cost-plus basis. One of its employees was injured on the premises owned by the Sugar Company, while performing the work of transferring the raw product of Atkins & Company. It was contended that the Sugar Company was a principal contractor under section 203 of article II and section 302 (b) of article III. The contract of Atkins & Company was produced, the contention being that such contract made the Sugar Company a principal contractor, with Loveland & Company a subcontractor. That contention was denied, and it was held that the Sugar Company, the owner of the premises, was liable at common law for the injury the workman sustained. This is the logical view to take.

We agree with the court below that the evidence was sufficient on the question of negligence to take the case to the jury because of faulty construction of the pier. While the testimony of the experts was not as consistent as it might have been and was at times contradictory, still it was for the jury.

McDonald was the employee of an independent contractor when the injury took place. The pier was built for carrying the superstructure, and it was broken in the course of the erection of that superstructure. The jury found the construction was not sufficiently strong to stand the stress and strain of the steel work, that it was built according to the owner's plans and specifications and that Levinson, in the position of owner, did not exercise due care in preparing such plans and specifications. In this respect what was done by him would be the same as the negligent act of any other contractor on the premises: Scalise v. Venzie, supra; McGrath v. Sugar Co., supra. Uhl, an independent contractor, had nothing to do with the construction of the pier, it was supplied by Levinson as a thing created on which Uhl's employees were to work. The accident did not occur out

of one of the ordinary risks taken in working on such construction which Uhl's employees were bound to take in order to effect the erection of the structure on which they were employed. It did not result from the very nature of the work involved. It was not part of the ordinary hazards of the work which the Compensation Act is supposed to cover.

The judgment of the court below is reversed and it is directed that judgment be entered on the verdict. Costs to be paid by appellee.