Miller *v.* W. T. Grange Construction Company
et al., Appellants.

Argued April 15, 1943. Before KELLER, P. J., BALD-
RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and
RENO, JJ.

*David M. Kaufman,* for appellants.

*Louis Rosenfield,* for appellee.

*Murray J. Jordan,* with him *Fred J. Jordan,* for Mandel and Pennsylvania Manufacturer's Association Casualty Insurance Company, specially appearing d. b. e.

OPINION BY STADTFELD, J., July 21, 1943:

On August 5, 1937, claimant, Thomas Miller, was seriously injured in an accident which occurred while he was working on a construction job in the City of Washington, Pa. A compensation agreement was entered into on November 9, 1937, between claimant and defendants, W. T. Grange Construction Company (who were the general contractors), and Employers' Liability Assurance Corporation, Ltd. On November 30, 1938, defendant sought termination of its liability as of November 11, on the ground that the agreement was signed under a mistake of fact and alleged that claimant was not at the time of the accident the employee of defendant company, but was employed by one Abe Mandel, trading as the Mandel Roofing Company. Hearings were held on November 20, 1940, and March 13, 1941.

It appears from the testimony that the defendant, W. T. Grange Construction Company, was retained as general contractor for the reconstruction of the Washington Theatre. This defendant had employed several sub-contractors, one of whom was a certain Kelleher who had contracted to install certain plates on the balcony of the theatre. Kelleher refused to complete his work and left. The defendant then performed part of this work using its laborers. Thereafter, defendant, about August 5, 1937, gave Mandel Roofing Company, which had a contract to do some other work on the

building, an order to complete the unfinished Kelleher job on the balcony.

The claimant had been employed by defendant and had done laboring work from June 20 until July 31, at which time he was temporarily laid off because some materials had not been delivered. However, claimant and several other men came to the premises daily to see if work was available. Claimant testified that Robert Dunn, who was defendant's superintendent of construction, and who had been his foreman before, put him to work on August 5, the day of the accident, and had given him orders to carry certain materials and had instructed someone else to keep him busy. Dunn testified that Mandel was short of men and asked him to get some help for him and he, Dunn, suggested claimant, and that thereafter Mandel gave claimant his orders. Claimant testified he was paid by the defendant company, and there is testimony that claimant's wages for August 5 were paid by that company.

The testimony discloses that following the accident the claimant's name was entered on the payroll of the defendant company; his wages for August 5 were paid by defendant. Dunn testified that Mandel requested him to do this because one of his workmen had just returned to work after being off for six months and another accident would make his insurance premiums too high. After Mandel's refusal to make out an accident report, Dunn called the Pittsburgh office of defendant company, and he was ordered to put claimant's name on his payroll.

The Referee found that the claimant at the time of the accident was working for the sub-contractor, the Mandel Roofing Company, but that the Statute of Limitations had now run against that company. The Referee further found that the claimant was innocent and had been lulled into security by the actions of

the defendant company, and that the defendant company was liable as statutory employer. Defendant took an appeal to the Workmen's Compensation Board, which Board affirmed the Referee's findings of fact and conclusions of law. From the opinion of the Workmen's Compensation Board, an appeal was taken to the Court of Common Pleas of Allegheny County, which Court in an opinion by THOMPSON, J. dismissed the appeal and affirmed the order of the Workmen's Compensation Board and entered judgment in favor of the claimant and against the defendant. From the dismissal of the defendant's petition for termination and the judgment of the court of common pleas, the defendant has taken this appeal.

We quote from the opinion of the Board: "The referee found that defendant company was the statutory employer; that there was no mutual mistake of fact since the circumstances were known to the defendant company when the agreement was signed, and refused to terminate compensation. The defendants prosecuted this appeal to the board.

"...... We think the record clearly indicates that claimant was guilty of no fraud or deception. If fraud was committed, it was done by defendant company, and the relief for its assurer lies with another tribunal. It seems too clear for argument that there was no 'mistake' such as is contemplated when, in law, an agreement or contract is vitiated on that basis. Here the one party to the agreement knew all the facts when the agreement was entered into. Whatever the basis for its actions was, now is not the time for it to get out of the obligation thus placed upon it, especially since to permit defendant insurance company its defense at this date would be to bar the completely innocent claimant from any recovery for his injury.

"Moreover, the defendant company was the general contractor. The definition of statutory employer as

set forth in section 203 of the Workmen's Compensation Act is as follows: 'An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.' Part of defendant's function was to supervise all work done on the building, to expedite the sub-contractors and to see that the building was completed by a specified date. It was clearly a 'statutory employer' as to claimant ......" See *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424.

The referee found conclusions of law, inter alia, "Fifth: That the defendant employer cannot be heard to complain of their own fraud or mistake when they were knowingly a part of such fraud and mistake." He further found that he was without authority under the Workmen's Compensation Act to treat the defendant's petition for termination as one to impose liability for compensation upon Abe Mandel trading as Mandel Roofing Company, and that the defendant is not entitled to termination as prayed for.

We quote from the testimony of claimant: "Q. What were your orders when you went to work that morning? (The day of the accident.) A. Well my orders was that I had some iron beams on the outside of the building and I was to bring them in and pile them to the upper side of the building. The second orders was when I got that through was to gather the scattered sheet iron in the lower side and bring it to the upper side of the building, which was under the balcony. Q. Who gave you those orders? A. Mr. Dunn.

"...... Q. When you went back after lunch did you receive any orders from anyone what to do? A. Yes,

sir. Q. From whom? A. Mr. Dunn came where I was and he hollered and said to the men to keep these men busy and shortly one of the men was up in the balcony called me and he says to me, 'Go around to the ladder and come up here,' so I went around to the ladder and went up where he was. When I got up there he says to me says, 'Help this fellow stack this sheet iron.' ...... Q. While you were employed on that job who paid you? A. Grange Construction Company. ...... Q. When you got up to the balcony, who was giving you your instructions about these plates? A. Well the man that Mr. Dunn called and told to keep this man busy, that's the man that gave me instructions. Q. Where was he working? A. Well he was working up on the balcony. ...... Q. On the morning of August 5th, the date you were hurt, Mr. Dunn gave you orders to move steel beams? A. Yes, sir. Q. And later in the morning did he give you orders to move steel plates? A. Yes, sir. ...... Q. Dunn told the men up there to keep you and the other fellow busy is that right? A. Yes, sir. ...... Q. What was your opinion as to who you were working for? A. Grange Construction Company. Q. Why did you think you were working for Grange? A. Well he's the Grange superintendent. ...... A. Mr. Bob Dunn he is the one that hired me and the one that had been paying me."

After a careful examination of the entire record we are of the opinion that there is ample testimony to sustain the findings of the referee and the board to support the judgment on the award.

We quote from the syllabi in the case of *Qualp v. James Stewart Co., Inc.*, 266 Pa. 502, 109 A. 780, from a very comprehensive opinion by Mr. Justice KEPHART, the facts of which are very similar to the instant case: "The employee of a second subcontractor is an employee of the general contractor within the meaning of article III of the Workmen's Compensation Act of June 2,

1915. The act did not intend to limit the 'hiring of a laborer' to a 'contractor' standing in immediate contractual relation with the employer (original contractor); it intended to include those laborers or employees who did work in furtherance of the employer's business, and who were employed by one having a lawful right or duty to engage in the business undertaken by the employer.

"...... An award of compensation for the death of a workman will be sustained, where the referee finds that a general contractor for the construction of a building entered into a contract with a subcontractor by which the latter was to perform a portion of the work; that the subcontractor entered into a contract with a second subcontractor by which the latter undertook to perform the same work according to the plans and specifications furnished by the original contractor; ...... and was killed in the course of his employment; that the general contractor, a corporation, did not post the notices required under the Workmen's Compensation Act limiting their liability; that it had control over the building where the deceased was at work; that neither the general contractor nor the subcontractor had control over the employees of the second subcontractor, but both were interested in securing completion of the work in accordance with the plans and specifications; that the work performed by the second subcontractor was a part of the regular business of the general contractor; and that it did not appear that the general contractor knew of the contract between the subcontractor and the second subcontractor."

The assignments of error are overruled and judgment affirmed.