**Alvin H. FRANKEL, Administrator of the Estate of Louis F. Grodzielanek, also known as Louis F. Grant, Deceased,**

v.

**INTERNATIONAL SCRAP IRON AND METAL CO., Inc.,**

and

**SCOTT PAPER COMPANY**

v.

**John KONOPKA.**

Civ. A. No. 13318.

United States District Court
E. D. Pennsylvania.

Dec. 24, 1957.

Freedman, Landy & Lorry, Milton M. Borowsky, Philadelphia, Pa., for plaintiff.

E. Walter Helm, 3rd, Philadelphia, Pa., for Internat'l Scrap Iron and Metal Co.

LORD, District Judge.

At a pre-trial conference in the present case, before the Honorable Thomas J. Clary on October 9, 1957, counsel for the plaintiff and counsel for the defendant, International Scrap Iron and Metal Co., Inc. (hereinafter referred to as "International") obtained approval of the Court to submit for disposition preliminary to the trial of the case, the question of whether International was the statutory employer of the plaintiff's decedent under the provisions of the Pennsylvania Workmen's Compensation Act.

Argument before this Court was thereafter heard as if a formal motion for summary judgment as to the "statutory employer" defense had been filed by the plaintiff. In consequence, if the ruling of this Court accords with plaintiff's contention that International was not in the position of an employer by virtue of the Act, an order barring defendant International from raising the statutory employer defense, and directing that the cause to recover damages shall proceed to trial on its merits, will be appropriate. On the other hand, if the motion is decided in favor of defendant International on this issue, plaintiff as a matter of law will not be in position to recover in this cause, and his action will accordingly be dismissed.

The instant case arises out of a fatal accident which occurred on March 9, 1950, in the city of Chester, Pennsylvania. Suit is brought by the Administrator, a citizen and resident of New Jersey, against International (*inter alios*), a Pennsylvania corporation, on behalf of the estate of the deceased who was killed in said accident. The amount in controversy exceeds three thousand dollars.

On the day mentioned, the plaintiff's decedent and a number of other men employed by John Konopka, third party defendant, were congregated inside a brick kiln when it collapsed, causing the decedent to suffer fatal injuries. The accident occurred upon premises owned by the Scott Paper Company. A contract had been entered into by and between Scott Paper Company and International on December 7, 1949, which provided that International would receive all of the construction material and equipment and supplies contained in the buildings located upon said premises in consideration of demolishing all buildings and structures

situated thereon and removing all of the debris.

At or about the same time, John Konopka proposed to International to demolish all kilns and to remove all fire brick located therein, which proposal was accepted by International—apparently without notice to Scott.

Before Konopka's demolition could be started, it was necessary that the steel work which surrounded the kiln be removed. A few weeks after International completed that job, Konopka commenced demolition of the kiln.

Since the weather conditions were adverse, workmen engaged in the clearing operations tended to seek shelter in the kilns, where they would warm themselves about small fires which they would build in oil drums. It was for this reason that a group of Konopka's men, including plaintiff's decedent, was gathered in the particular kiln which collapsed and caused him to receive the injuries from which he shortly thereafter died.

Whether decedent was the statutory employee of International depends upon whether the transaction between Konopka and International was within the situations prescribed by the Pennsylvania Workmen's Compensation Act, 77 P.S. § 1 et seq. The pertinent sections of the Act are § 203 and § 302(b), 77 P.S. § 52 and § 462, respectively, which are in turn subject to the definition of *contractor* in § 105, 77 P.S. § 25. Section 203 provides:

"An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe. 1915, June 2, P.L. 736, art. II, § 203; 1937, June 4, P.L. 1552, § 1; 1939, June 21, P.L. 520, § 1."

Section 302(b) is to the same effect except that in the place of the phrase "shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employee," it provides:

" * * * shall be conclusively presumed to have agreed to pay to such laborer or assistant compensation in accordance with the provisions of article three, * * * "

Section 105 defines "contractor" as follows:

"The term 'contractor,' as used in article two, section two hundred and three, and article three, section three hundred and two (b), shall not include a contractor engaged in an independent business, other than that of supplying laborers or assistants, in which he serves persons other than the employer in whose service the accident occurs, but shall include a sub-contractor to whom a principal contractor has sub-let any part of the work which such principal contractor has undertaken. 1915, June 2, P.L. 736, art. I, § 105; 1937, June 4, P.L. 1552, § 1; 1939, June 21, P.L. 520, § 1."

Solution of the present pure question of Pennsylvania law is substantially aided by judicial interpretation of those sections. A leading case is McDonald v. Levinson Steel Co., 1930, 302 Pa. 287, at page 293, 153 A. 424, at page 426 in which it was said:

" * * * Section 302(b) merely carries into effect Section 203. Section 105 modified 'contractor' in section 203 so as to exclude a contractor engaged in an independent business, or an independent contractor, but includes a subcontractor to whom a principal contractor has sublet part of the work. * * * 'Contractors' as used in section 105 is synonymous with 'subcontractors' (Gallivan v. Wark Co., 1927, 288 Pa. 443, 136 A. 223, and other cases); though, as stated in Qualp v. James Stewart Co., 266 Pa. 502, 109 A. 780, subcontractors are still regarded as independent contractors under certain conditions.

"As the term 'contractor' as used in section 203 means subcontractor, or a contractor other than an independent one, then there must be a principal contract or one on which the subcontract is dependent since subcontractor presupposes a principal contact. Here again section 105 helps out for it describes the person in whom the principal contract is lodged as being the principal contractor. 'Employer' is the only other person named in section 203 in connection with 'contractor,' and the employer must be a party to the principal contract. Employer includes principal contractor, and as most generally used in sections 105 and 203 they must be regarded as synonymous: Qualp v. James Stewart Co., supra."

■ In the light of that interpretation, it is clear that Scott was the owner, and International—at least in the first instance—was the principal contractor. Since Konopka contracted for part of the very job which International had undertaken, his position is clearly a subcontract in one aspect.

Plaintiff argues, however, that Konopka was not a subcontractor within the meaning of the statute. He says that the criterion as to the independent contractor status is absence of a reservation by his employer "over the means of accomplishing the work," as opposed to the result to be accomplished, a statement which recurs in the cases, e. g. McDonald v. Levinson Steel Co., 1930, 302 Pa. 287, 297, 153 A. 424; Brooks v. Buckley & Banks, 1927, 291 Pa. 1, 139 A. 379; McGrath v. Pennsylvania Sugar Co., 1925, 282 Pa. 265, 127 A. 780; Simonton v. Morton, 1923, 275 Pa. 562, 119 A. 732; Smith v. State Workmen's Insurance Co., 1918, 262 Pa. 286, 105 A. 90, 19 A.L.R. 1156; Kelley v. Delaware, Lack. & W. R., 1921, 270 Pa. 426, 113 A. 419; Freeny v. Wm. Penn Broadcasting Co., 1956, 180 Pa.Super. 434, 118 A.2d 275.

The "right to control" test is an established one, of course. With reference to the statute, however, the cases have invoked it to determine whether a contractor, doing work for an *owner*, is an independent contractor or a subcontractor. In the leading case of McDonald v. Levinson Steel Co., 1930, 302 Pa. 287, 153 A. 424, the owner, Levinson, was erecting a shed for his own occupancy on ground that was in his possession under a lease. He contracted with several parties, including one Uhl, for parts of the construction work, reserving no control over the means of accomplishing the work. Uhl's workman, McDonald, was hurt on the job. The Pennsylvania Supreme Court held the statute did not apply to make McDonald the "employee" of Levinson, saying (302 Pa. at page 297, 153 A. at page 427):

"* * * The only contract we have in this case is the principal contract between Levinson and Uhl, in which Levinson is a contractee and Uhl is an independent not a subcontractor; * * *"

and pointed out that in order to have a subcontractor, there must be a principal contractor, quoting the passage to that effect from Qualp v. James Stewart Co., 266 Pa. 502, 109 A. 780, heretofore set out.

The Qualp case, last mentioned, involved the situation of the present case, where the principal contractor let part of his work to another without reserving control over the manner of performance. The facts were somewhat more involved. The Stewart Co., general contractor, turned over to one Hibbs part of Stewart's work under the contract. Hibbs in turn delegated to Wolfarth without the knowledge of Stewart. The latter, Stewart, was nevertheless held to be the statutory employer of a Wolfarth workman who was injured in the course of his employment on that job, the Court saying (266 Pa. at page 507, 109 A. at page 781):

"The Stewart Co., as original contractor in control of the premises to perform the work it had engaged to do, is regarded by the Workmen's Compensation Law as the employer to those engaged on or about the

work within the scope of the undertaking. It was the first, so far as the claimant is concerned, to assume charge of the premises and to agree to do the work looking to at least partial completion of the structure or enterprise as contemplated by the owner. This relation of employer to those employed about the premises includes only those whose work is a part of that embraced within the terms of the employer's contract with the owner. * * *

"The claimant, a laborer on the premises under the employer's control, was engaged by a contractor to do a part of the work undertaken by the original contractor; this work was a part of the employer's regular business made so by his contract with the owner.

"The work so performed by the laborer was intrusted by the original contractor to a contractor ordinarily known as a subcontractor, who, by the terms of the act, is included in the designation 'contractor'. He is a subcontractor because his contract is subordinate to and under the principal contract, though in the business world he may be independent; but as regards this transaction his contract is a dependent one wherein he agrees to do all or a part of that which another has agreed to do. * * *"

It is manifest, in the light of Mr. Justice Kephart's exposition in the quoted passage, that Konopka—although an independent contractor in the business world, and independent in the sense that he had free rein as to the manner of performing his part of International's job—was a subcontractor under the statute in that his contract depended upon International's principal contract.

Plaintiff, however, argues that the kiln demolition was not part of International's "regular business". He contends that International Scrap Iron and Metal Co. was interested only in reclaiming metal. The brick salvage operation, he says, was turned over to Konopka, and in fact the depositions indicate that International seldom if ever in its history had made any attempt to reclaim or resell anything other than metal.

To say that International was in the business of demolishing structures to salvage metal, but not to salvage brick, is to attempt a distinction which is at best rather finical. In any case, however, the quoted passage in the Qualp case, supra, makes clear that the statutory prerequisite that "the performance upon such premises of a part of the employer's regular business entrusted to that employé or contractor" means simply the "employer's regular business, made so by his contract with the owner," Qualp v. James Stewart Co., 266 Pa. 502, 508, 109 A. 780, 781.

■ Another contention of plaintiff is that International itself has designated Konopka as an independent contractor by its answer and by tacit admissions to requests for admissions. It shows defendant's answer to paragraph 7 of plaintiff's complaint, which reads:

"* * * the International Scrap Iron and Metal Co., Inc., aver that the said John Konopka was an independent contractor and the said International * * * had no control, management or operation over the employees of John Konopka Wrecking Co., more especially, Louis F. Grodzielanek."

Paragraph 2 of Plaintiff's requests for admissions reads:

"Konopka was an independent contractor and International had no control or right of control over the manner in which Konopka performed his duties."

It is a fact that International failed to answer or object to the requests for admissions, and plaintiff points out that under Rule 36, Federal Rules of Civil Procedure, 28 U.S.C., same are deemed to be admitted.

■ The admissions cannot be taken as controlling. Decision should not be based on mere matters of pleadings or technical admission. As the United

States Supreme Court has pointed out at the current term, "the purpose of pleading is to facilitate a proper decision on the merits," Conley v. Gibson, 78 S.Ct. 99, 103 (Nov. 18, 1957). The opinion by Mr. Justice Black adds:

"* * * The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive as to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. Cf. Maty v. Grasselli Chemical Co., 1937, 303 U.S. 197, 58 S.Ct. 507, 82 L.Ed. 745 * * *"

In oral argument plaintiff advanced the further proposition that the transaction between International and Konopka was simply a sale—that International simply sold the bricks in place to Konopka. In exchange for the bricks, Konopka was to remove them, together with the remaining rubble, in lieu of monetary consideration.

That interesting concept, unfortunately for plaintiff, is a mere circumstance and not a determining factor permitting escape from the statutory relation. For that matter, International's contract with Scott was identical in terms, although not in scope. The fact that International was to be paid in salvage makes the arrangement with Scott no less a general contract for demolition, it seems clear.

■ The conclusion follows that plaintiff's decedent was an employee of International by virtue of statute. This Court has considered each contention of plaintiff with the utmost care in full awareness that the statutory employer relation is an artificial creature of statute. The provisions of the Act creating this relation of statutory employer were of course unknown at common law. As the cases have said, it is necessary to construe the statute strictly, lest it be given effect beyond the intention of the legislature: Gallivan v. Wark Co., 1927, 288 Pa. 443, 449, 136 A. 223; McDonald v. Levinson Steel Co., 1930, 302 Pa. 287, 153 A. 424; Boettger v. Babcock & Wil-

cox Company, 3 Cir., 1957, 242 F.2d 455, 458.

For that reason, decision has been reached in the first instance without dependence upon the fact that a Pennsylvania trial court, in the case of another Konopka workman killed in the same misfortune, ruled squarely that Konopka was a subcontractor and entered a nonsuit: Brown v. International Scrap Iron & Metal Co., 41 Del.Co.R., Pa., 163. In its opinion, denying the motion to take off the nonsuit, that Court relied upon the same case of McDonald v. Levinson Steel Co., 1930, 302 Pa. 287, 294, 153 A. 424, and said:

"We think it is too clear for argument that the testimony before us discloses the relation of statutory employer under section 203 of the Act."

Rejecting plaintiff's contention that the demolition in question was not part of International's "regular business," the opinion continues:

"* * * The employer's 'regular business', as that term is used in the law, clearly means the business envisaged in the employer's contract with the owner, 'or one in the position of an owner.' The conclusion follows inevitably, we think, from a consideration of the very purpose of the legislation. 'The legislature wanted to definitely fix some responsible party with the obligation of paying compensation to injured workmen, and the party selected was the first whose duty it was to assume control of the work. It selected the first in succession from the owner, believing the owner would contract with none but responsible persons. He was the first in the field and in the contracting scheme of work, the head of the endeavor, the person to whom an employee would naturally look': Qualp v. James Stewart Co., 266 Pa. 502, 509 [109 A. 780]."

In respect to the other contentions of the plaintiff similar to those presented

here, that Court reached conclusions no different from those stated herein as to the instant case.

For the foregoing reasons, the Court finds that the defendant, International Scrap Iron and Metal Co., Inc., was the statutory employer of plaintiff's decedent within the terms and meaning of the Pennsylvania Workmen's Compensation Act. Plaintiff's motion for summary judgment as to the statutory employer defense is hereby Denied.

Since the remedies provided by the Pennsylvania Workmen's Compensation Act are exclusive as to the situations to which the Act applies, it follows as a matter of law that plaintiff cannot recover and it is accordingly Ordered that the within action be and the same is hereby Dismissed.