**William ROLICK, Appellant,**

v.

**COLLINS PINE COMPANY; and Collins Pine Company, t/d/b/a Kane Hardwood Division.**

**No. 90–3313.**

United States Court of Appeals, Third Circuit.

Argued Nov. 27, 1990.

Decided Feb. 5, 1991.

Janice G. O'Reilly (argued), Berger, Kapetan, Malakoff & Meyers, Pittsburgh, Pa., for appellant.

Edward C. Schmidt (argued), Rose, Schmidt, Hasley & DiSalle, Pittsburgh, Pa., for appellees.

Before BECKER and NYGAARD, Circuit Judges, and POLLAK, District Judge.*

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

In this diversity case we must decide whether William Rolick is an independent contractor or a statutory employee within the meaning of the Pennsylvania Workmen's Compensation Act, 77 Pa.Stat.Ann. §§ 1–1603 (Purdon 1987) ("PWCA"). Rolick was a logger. One winter day while cutting timber in the Allegheny National Forest, Rolick was struck by a birch tree which broke his neck. He is now a quadriplegic. At the time of the accident, Rolick was cutting timber for the Nortim Corporation ("Nortim") and Collins Pine Company, Kane Hardwood Division ("Kane") and sued Kane to recover for those injuries. After a nonjury trial, the district court decided that Rolick was a statutory employee of Kane within the meaning of the PWCA and, therefore, dismissed his complaint, limiting Rolick to a remedy from workmen's compensation. We will reverse.

## I.

Kane entered into a Timber Sale Contract with the United States Department of Agriculture, Forest Service, allowing Kane to cut and remove timber from a tract of land in Pennsylvania. Kane then entered into a Logging Services Contract with Nortim, a logging insurance group, to select, hire, schedule, and monitor loggers who would actually cut and haul the timber. Nortim agreed to make workmen's compensation insurance available to the loggers and introduce a mandatory safety awareness program. Nortim in turn hired the Pennsylvania Forestry Association to monitor and instruct the loggers on safety practices. Nortim employees also monitored the loggers to insure that the work was performed in accordance with contract requirements and provided field instructions on what and where to cut.

Rolick entered into a Cutting and Hauling Agreement with Nortim to fell, skid and/or haul the timber. The agreement designated Rolick an independent contractor and outlined his unconditional right to control work methods as well as his workmen. Nortim paid Rolick for the timber he cut, did not withhold social security or income tax from his check, and, because he was a contractor, issued him a 1099 federal tax form instead of an employee's W–2 form at the end of the year. Kane waived any right to control the loggers' methods, and the logging contract referred to them as independent contractors.

On the work site, Rolick performed his contractual obligations. Nortim never told him how to do the job, when to begin and end, how long to work, what tools and equipment to use or how many or which employees to use. Although Rolick understood that he would be considered an employee for workmen's compensation purposes, he actually paid for this coverage. Nortim merely deducted premium payments from Rolick's check.

While working under this agreement, Rolick suffered neck and back injuries from the falling tree and filed this suit. Following a bench trial on the specific issue of Rolick's employee/independent contractor status, the court directed the parties to file memoranda on the applicability of sections 302(a) and 302(b) of the PWCA, 77

---

* Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Pa.Stat.Ann. §§ 461, 462. The district court then dismissed Rolick's claim, concluding Rolick was an employee of subcontractor Nortim within the meaning of the PWCA, a statutory employee of Kane, and limited by Pennsylvania law to his workmen's compensation remedy. 708 F.Supp. 111.

## II.

The sole issue on appeal is whether the district court properly concluded that Kane was Rolick's statutory employer and entitled to tort immunity. The material facts are not at issue. The district court's decision depends upon interpretation and application of Pennsylvania law. Thus, our review is plenary. *Dent v. Cunningham*, 786 F.2d 173, 175 (3d Cir.1986).

## A.

The PWCA provides benefits to injured employees regardless of fault. *See* 77 Pa. Stat.Ann. §§ 1–1603 (Purdon 1987). Employers bear the cost of these benefits and the PWCA protects them from other tort liability for work-related accidents. 77 Pa. Stat.Ann. § 481(a). *Kohler v. United States*, 602 F.Supp. 747, 748 (W.D.Pa.), *aff'd*, 779 F.2d 43 (3d Cir.1985).

Generally, only employers standing in a direct master-servant relationship with an injured worker may be liable for workmen's compensation benefits. But a narrow statutory exception to this principle provides that, under certain very limited circumstances, an employer not standing in a direct master-servant relationship with an injured worker may nonetheless become liable for workmen's compensation benefits. The exception, which creates the status of a so-called "statutory employer," is embodied in section 203 of the Workmen's Compensation Act:

> An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employee or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to that employee or contractor,

shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employee.

77 Pa.Stat.Ann. §§ 52, 462 (Purdon Supp. 1990).

Sixty years ago this somewhat opaque statutory provision was translated by the Pennsylvania Supreme Court, in the leading case of *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 294–95, 153 A. 424 (1930), into serviceable language which, to this day, remains the governing rule:

> To create the relation of statutory employer under section 203 of the act (77 P.S. § 52), all of the following elements essential to a statutory employer's liability must be present: (1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business is entrusted to such subcontractor. (5) An employee of such subcontractor.

Ordinary employers who, under the Workmen's Compensation Act, are required to provide workmen's compensation benefits for those with whom they are in a direct master-servant relationship, are, of course, given by the Act the *quid pro quo* of immunity from tort liability for the work-related injuries of their employees. The Act does not in terms provide statutory immunity for statutory employers. But the courts of Pennsylvania have fashioned a cognate common law immunity. The test of eligibility for such immunity is the five-element test of statutory employer status prescribed by *McDonald, supra.* The Pennsylvania Supreme Court has insisted that the test be complied with in every particular—an insistence evidently born of the court's concern that some employers will endeavor "to escape the effect of the Compensation Act so that they will not be compelled to pay compensation or carry insurance, and, on the other hand ... when faced with liability at common law ... strive vigorously to come under the sheltering protection of the act." *McDonald*, 302 Pa. at 292, 153 A. 424. To

allay this concern, the Supreme Court of Pennsylvania determined that (*ibid.*):

> It will be better for the efficient administration of the Compensation Act to construe it literally as to the obligations created, leaving those under the common law that were apparently intended to be so, and under the Compensation Act those intended.

Heeding the admonition of the Supreme Court, the Superior Court has rigorously patrolled claims of statutory employer status. "These [*McDonald*] criteria must be applied strictly, particularly where an allegedly negligent contractor seeks asylum from common law liability." *Travaglia v. C.H. Schwertner & Son*, 391 Pa.Super. 61, 570 A.2d 513, 518 (1989). See also, *Stipanovich v. Westinghouse Electric Corporation*, 210 Pa.Super. 98, 231 A.2d 894 (Pa. Super.1967).

In this case the parties have stipulated that the first four *McDonald* elements are satisfied. That is to say, the parties are in agreement that (1) defendant Kane entered into a contract with the Forest Service authorizing Kane to cut timber from a forest tract managed by the service; (2) Kane thereupon exercised control over the tract; (3) Kane entered into a subcontract with Nortim under which the latter was to arrange for the actual logging operations; and (4) Kane thereby entrusted a portion of its "regular business" to Nortim. The remaining issue is whether the fifth *McDonald* element is met—i.e., whether plaintiff Rolick was "[a]n employee of ... subcontractor" Nortim.

## B.

■ When our jurisdiction is based upon diversity, we must ascertain and apply state law. When presented with a novel issue of law, or where applicable state precedent is ambiguous, absent or incomplete, we must determine or predict how the highest state court would rule. *Erie Castings Company v. Grinding Supply, Inc.*, 736 F.2d 99, 100 (3d Cir.1984). Here, where the issue before us falls outside the scope of precise issues on which the Pennsylvania Supreme Court has spoken, proper regard must also be given to the decisions of its intermediate appellate court. *Burke v. Maassen*, 904 F.2d 178, 184 (3d Cir.1990).

> An intermediate appellate state court ... is datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*West v. AT & T Company*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). *See also Wisniewski v. Johns–Manville Corporation*, 759 F.2d 271, 273–74 (3d Cir. 1985) (although lower state court decisions are not controlling on an issue on which the highest court of the state has not spoken, federal courts must attribute significant weight to these decisions in the absence of any indications that the highest state court would rule otherwise).

Unfortunately, sections 52 and 462 do not define "employees," but simply refer to persons in employment situations as "laborers" or "assistants." The district court relied upon *Qualp v. James Stewart Company*, 266 Pa. 502, 109 A. 780 (1920) to supply the legal definition of "employee" as used in the fifth *McDonald* requirement. Its reliance was misplaced. The Pennsylvania Supreme Court stated in *Qualp* that 77 Pa.Con.Stat.Ann. §§ 52 and 462

> intended to include those laborers or employes [sic] who did work in furtherance of the employer's business ... a laborer hired by a contractor for the performance of a part of the employer's regular business entrusted to that contractor.

*Qualp*, 109 A. at 781.

*Qualp* thus was concerned only with what would become the fourth element of the *McDonald* test—that the laborer be hired to perform work that is part of the statutory employer's regular business. *Qualp* did not address the scope of the term "employee" as it was used later in the fifth prong of *McDonald*. Moreover, "the holding in *Qualp* ... has been drastically changed by the requirements set forth in *McDonald*." *Travaglia*, 570 A.2d at 518. Hence, for a definition of employee, we must begin with *McDonald* itself.

In *McDonald,* Levinson Steel Company erected a building on leased land. It contracted with one Uhl to erect the steel. McDonald, an employee of Uhl, was injured on the job and sued Levinson in a common law negligence action. The issue in *McDonald* is the third element: Is Uhl a subcontractor of Levinson? The court held that Uhl was an independent contractor, not a subcontractor of Levinson. It concluded that because "there is no question of control or supervision" such as would create a master-servant relationship between Levinson as master and Uhl, and, consequently, Uhl's employees as servants, Levinson was not liable to McDonald for compensation under the act. It stated the test to be employed as, "unless the relation of master and servant is established by the contract reserving control over the means of accomplishing the work as well as the result to be accomplished ... a workman injured on that work is not entitled to compensation from the ... statutory employer ..." under the act. *McDonald v. Levinson,* 153 A. at 427, citing *Brooks v. Buckley and Banks,* 291 Pa. 1, 139 A. 379 (1927).

■ Here the issue is the fifth element: Is Rolick an employee of Nortim? But the answer still depends upon Nortim's right to control the means or method by which Rolick performs his work as well as the result to be accomplished. *Rich Hill Coal Company v. Bashore,* 334 Pa. 449, 7 A.2d at 302, 311 (1939) ("The relationship of master and servant exists where the employer has the right to select the employee, the power to remove and discharge him, and the right to direct both what work shall be done and the way and manner in which it shall be done.") It is not necessary that Nortim actually exercise control over Rolick's work methods, only that it has the right to do so. *Rodgers v. P–G Publishing Co.,* 194 Pa.Super. 207, 166 A.2d 544, 546 (1960).[1] Hence, if Nortim did not possess the right to control Rolick's work methods, then Rolick and Nortim were independent contractors with each other, and Kane, the principal contractor, may not rely on the statutory employer defense. *See Sechrist v. Kurtz Bros.,* 147 Pa.Super. 214, 24 A.2d 128, 130–131 (1942). Control depends upon the particular facts of each case. *Capozzoli v. Stone & Webster Engineering Corp.,* 352 Pa. 183, 185–87, 42 A.2d 524, 525 (1945); *Swartz v. Eberly,* 212 F.Supp. 32, 34 (E.D.Pa.1962) (non-PWCA case). *See Babich v. Pavich,* 270 Pa.Super. 140, 142–45, 411 A.2d 218, 220–221 (1979) (above rule applied in determining employer immunity under 77 Pa. Stat.Ann. § 72).

## C.

■ We conclude that Rolick was an independent contractor rather than Nortim's employee. Although the Cutting and Hauling Agreement required Rolick to cut logs in a certain manner and to certain specifications, these are either safety or end-product requirements and do not represent rights to control Rolick's work methods. Rolick set his own hours, provided his own tools, hired his own workers, and accomplished the desired results, all by his own methods.

The Cutting and Hauling Agreement also supports Rolick's status as an independent contractor since it states both that Rolick is an "independent contractor" and that he will be "solely responsible for the methods used and the manner in which all [his] obligations ... are fulfilled." App. at 120A, ¶ 9. Although the "courts will not be controlled by the nomenclature the parties apply to their relationship," *Capozzoli,* 352 Pa. at 185–87, 42 A.2d at 525, a combination of the Cutting and Hauling Agreement with these facts confirm the independent relationship and purpose the agreement describes. The entire contract, the respective rights and duties it created, the actual relationship of the parties established by the facts, the parties' intent and their actions bespeak only an independent

---

1. Admittedly, *McDonald* did not elaborate on the scope of the term employee for purposes of the fifth prong. In the absence of any indication to the contrary, we must assume, however, that *McDonald* intended the term employee to be given its ordinary common law meaning, i.e. that a master-servant relationship exists.

contractor relationship between Nortim and Rolick.

Nor do Nortim's monitoring and safety procedures change our conclusion. "The law of Pennsylvania makes it clear that one who employs an independent contractor may also employ a person to ascertain that the work is done according to plans and specifications and that the employment of such a person in no way indicates that the independent contractor is being subjected to control." *Fisher v. United States,* 441 F.2d 1288, 1291 (3d Cir.1971).

Likewise, other facts facially appearing to support an employer-employee relationship, on closer examination, do not. Indeed, Nortim provided workmen's compensation insurance coverage for Rolick and Rolick took full advantage of that coverage. But that fact is of little help since the coverage was optional, Nortim merely made it available at group rates, and Rolick actually paid for it. *See Gailey v. State Workmen's Insurance Fund,* 286 Pa. 311, 133 A. 498 (1926) (existence of worker's compensation insurance for benefit of worker some evidence, but not controlling).

## III. CONCLUSION

On balance, we conclude that Nortim did not retain any control over Rolick's work methods and that Rolick had exclusive control of the manner of performing the work. The district court decision that Rolick was a statutory "employee" of Nortim is incorrect; Rolick is an independent contractor.[2] Kane cannot benefit from the PWCA statutory employer defense. The judgment of the district court will be reversed.

---

**2.** Since we conclude that Rolick is not covered under sections 52 and 462 of the PWCA, we likewise hold that he is not an "employee" under 77 Pa.Stat.Ann. § 461.