IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Saladworks, LLC and Wesco      :
Insurance Company,          :
             Petitioners    :
                              :
       v.                :
                              :
Workers' Compensation Appeal  :
Board (Gaudioso and Uninsured  :
Employers Guaranty Fund),     :  No. 1789 C.D. 2014
            Respondents   :  Argued:  May 4, 2015

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY          FILED:  October 6, 2015

Saladworks, LLC and Wesco Insurance Company (Saladworks) challenge the order of the Workers' Compensation Appeal Board (Board) that reversed the Workers' Compensation Judge's (WCJ) denial of the Uninsured Employers Guaranty Fund's (UEGF) petition to join Saladworks.

**I. Background.**
**A. General.**

Frank Gaudioso (Claimant) worked at a Saladworks restaurant. Claimant's job duties included placing food orders, doing prep work, working the cash register, and making salads. On March 14, 2011, Claimant walked out of the back of the store to throw away a box. Claimant sustained an injury when he slipped and twisted both of his knees. On May 26, 2011, Claimant petitioned for benefits against Saladworks though that name was later amended to G21, LLC d/b/a Saladworks (G21). Claimant also petitioned for penalties on the basis that

G21 had not filed any Bureau documents to accept or deny the claim in violation of Section 406.1 of the Workers' Compensation Act (Act)[1], 77 P.S. §717.1.

On September 7, 2011, Claimant filed a separate claim petition against UEGF. On December 9, 2011, UEGF filed a joinder petition against Saladworks and alleged that Saladworks was "an additional employer, agent, statutory employer of Claimant" and that Saladworks was jointly and severally liable. Saladworks moved that the joinder petition be dismissed/stricken because Saladworks had no relationship with Claimant but was a franchisor that granted certain rights to G21 to use its registered trademarks and system pursuant to the terms and conditions of the Franchise Agreement (Agreement).

## B.  Joinder Petition, Claim Petition against G21, and Penalty Petition against G21.

At hearing before the WCJ on January 25, 2012, Roseann Maillie (Maillie), the director of franchise administration for Saladworks, testified that Saladworks was a franchisor and "we sell franchises to prospective franchisees to open up their businesses with Saladworks' concept." Notes of Testimony, January 25, 2012, (N.T.) at 10; Reproduced Record (R.R.) at 68a. Maillie testified that the Saladworks in the Bourse building in Philadelphia was independently owned by G21, the franchisee. Mr. Ko[2] (Ko) was the owner of G21. N.T. at 11; R.R. at 69a. The relationship between Saladworks and G21 was established through the signing of the Agreement. N.T. at 11; R.R. at 69a. The Agreement was then entered into

_____

[1]    Act of June 2, 1915, P.L. 736, *as amended*.  This section was added by February 8, 1972, P.L. 25.

[2]    Mr. Ko's first name is not part of the record.

evidence. According to Maillie, Saladworks did not know the identity of employees at franchised locations, did not do any of the hiring or firing of employees at franchise locations, did not dictate how many hours an employee worked at a franchised location, and did not provide any training for the day to day operational employees of a franchisee. N.T. at 12-15; R.R. at 70a-73a. On cross-examination, Maillie admitted that Saladworks trains the owner of the franchise, that Saladworks' marketing department assists the franchisees with marketing, and that someone from Saladworks comes to the franchisee's location to assist the franchisee prior to the opening of the location. N.T. at 16-18; R.R. at 74a-76a. Further, Saladworks conducts operational performance reviews of franchisees. N.T. at 18; R.R. at 76a. Saladworks provides the franchisee with a confidential business manual which instructs the franchisee how to run the business. N.T. at 25-26; R.R. at 83a-84a. Maillie admitted that Saladworks has the authority to terminate a franchise if the franchisee fails to make a requested remodel of a store. N.T. at 27; R.R. at 85a. Further, a franchisee must submit proposed advertising to Saladworks for its approval and spend a certain amount for advertising per year. N.T. at 28; R.R. at 86a. Under the franchise agreement Saladworks requires the franchisee to maintain certain types of insurance, including workers' compensation insurance. N.T. at 29-30; R.R. at 87a-88a.

At the conclusion of Maillie's testimony, the WCJ granted Saladworks' motion to strike the joinder petition because "I do not see any at-will employment relationship here and I am not aware of any case that holds that a franchisor is an employer." N.T. at 38-39; R.R. at 96a-97a.

3

Claimant testified[3] that on March 14, 2011, while employed by G21 as a prep person, he "walked out of the store in the back hallway to throw away a box and I slipped on water and twisted both my knees." N.T. at 41; R.R. at 99a. When Claimant told Ko about his injury, Ko told him that he did not have insurance and "if I could wait a few weeks, let him get insurance, then he'll put me on a claim." N.T. at 42; R.R. at 100a. Claimant described his knees as "stiff, sore, they're swollen, it's hard to walk on them. They hurt." N.T. at 46; R.R. at 104a. Claimant has not worked since the injury. He did not believe that he could return to work because he would have to stand for his whole shift, and he could not handle that. N.T. at 46-47; R.R. at 104a-105a. On cross-examination, Claimant admitted that he received social security disability benefits for herniated discs in his neck and back, nerve damage in his arms, and an amputated finger. These injuries were unrelated to the alleged work-related injury. N.T. at 51; R.R. at 109a.

The WCJ granted Claimant's claim petition against G21. The WCJ granted Saladworks' motion to strike the joinder petition and dismissed UEGF's joinder petition. The WCJ granted Claimant's penalty petition against G21. The WCJ made the following relevant findings of fact:

> 11. The WCJ finds despite being correctly served with the Claim Petition, Employer [G21] did not file an answer to the petition within 20 days of the Notice of Assignment to the WCJ. Accordingly, as explained below, all well-pled allegations of the Claim petitions [sic] are deemed admitted and Employer [G21] is prevented from presenting any evidence to defend the claim.
> . . . .

---

[3] Claimant's testimony also served as evidence in the claim petition against UEGF.

4

13. The Judge finds that Employer did not provide an adequate excuse for failing to file a timely answer to the claim petition.

. . . .

15. With regard to the joinder petition, the Judge finds Ms. Maillie's testimony fully credible. Based on her testimony and the Franchise Agreement entered into evidence, the Judge finds that Saladworks, LLC does not know who the employees of any individual franchise [are] and has no contact or control over the individual franchisee's employees. Saladworks, LLC does not hire, fire, set the hours or have any control for any of the franchisee's employees. Rather, it is the franchisee that controls the employees of the franchisee. In this case, the franchisee was G21, LLC.

## **DISCUSSION**

The uncontroverted evidence of record shows that the Employer [G21] failed to timely answer the Claim Petition in this matter. Moreover, the evidence demonstrates that the Claim Petition itself was well pled to meet the requirements regarding Yellow Freight motions.

Under Yellow Freight, Inc. v. WCAB [Workmen's Compensation Appeal Board] (Madara), 423 A.2d 1125 (Pa. Cmwlth. 1981), and Section 416 of the Workers' Compensation [Act] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §821, a claimant can motion for a workers' compensation judge to close the record and issue a decision based upon the petition itself if the employer failed to file an answer to the claim petition within 20 days time. Moreover, when an employer fails to file a timely answer without adequate excuse, every well pled factual allegation is admitted as true and the employer is barred from presenting challenges to the allegations in the petition and from presenting any affirmative defenses. . . .

The failure to file a timely answer precludes an employer from presenting any evidence in rebuttal or as an affirmative defense with respect to those alleged facts;

5

the workers' compensation judge may only consider the allegations set forth in the claim petition and *any additional evidence* presented by the claimant (emphasis added) [by WCJ]. . . .

. . . .

The second issue regards Saladworks, LLC's motion to strike the UEGF's joinder petition. Saladworks, LLC argues that is merely a franchisor, and not an employer, and thus should be dismissed from this workers' compensation action. This Judge agrees.

The . . . Workers' Compensation Act applies to 'employers' and requires compensation of injured 'employees.'. . . . Thus, determining whether the parties fall into these categories is a threshold determination in workers' compensation cases.

The determination of whether a particular party is an 'employer' under the Act is one governed by reference both to the statutory definition and to the significant case law that has developed under it. Briefly, the statute defines the term as synonymous with the term 'master.' . . . The cases hold that the statutory definition is applied by reference to the body of common law dealing with the master-servant relationship in a general context. . . .

The law has a long heritage; cases have explored the employment relationship and the specific issue of employer identity for many years. In general, the cases hold that an entity which controls, or has the right to control, the details of the injured worker's labor, is a 'master' and potentially liable to such a 'servant' under the Act. . . .

In the case at bar, the Franchise Agreement between Saladworks, LLC and G21, LLC explicitly states that G21, LLC is an independent contractor and has no authority to act as an agent of Saladworks, LLC. Ms. Maillie credibly explained that Saladworks, LLC does not know who the employees of any individual franchise [are] and has no contact or control over the individual franchisee's employees. Saladworks, LLC does not hire, fire, set the hours, or have any control for any of the

franchisee's employees. Rather, it is the franchisee that controls the employees of the franchisee. In this case, the franchisee was G21, LLC. Saladworks, LLC merely provides training to the owner of the franchisee, not the employees of the franchisee. Saladworks, LLC, as the franchisor, merely has certain proprietary items and trademarks (such as any franchisor like McDonalds and Burger King) and establishes with the franchisee certain policies for the layout and look of individual locations. Claimant testified that the employer's name on his paycheck was 'G21,' LLC. Given Saladworks, LLC does not meet the statutory definition of employer, or the cases interpreting it, Saladworks, LLC should be dismissed.

This Judge cannot find one single Pennsylvania workers' compensation case where a franchisor has been held to be an employer and the UEGF has not provided any support for this assertion. . . . To force Saladworks, LLC to remain in this case without a scintilla of evidence that it meets the definition of 'employer' under the Act is . . . needless and unreasonable.

WCJ's Decision, April 3, 2012, Findings of Fact Nos. 11, 13, and 15 and Discussion at 3-6.

UEGF appealed the denial of its joinder petition to the Board and asserted that the WCJ erred when he determined that Saladworks was not a statutory employer of Claimant. The Board agreed and reversed:

Here, the WCJ relied on the 'control test'. . . to find that Saladworks, as a franchisor, did not meet the definition of an 'employer' under the Act because it did not control, 'or have the right to control, the details of the injured worker's labor.'. . . However, the status as a statutory employer is not established through an actual employment relationship. Rather, a statutory employer 'is a master who is not a contractual or common-law one, but is made one by the Act' . . . . Here, the WCJ failed to

address whether Saladworks was a 'statutory employer' under Section 302(a) of the Act. . . .

. . . .

We agree with UEGF that the Supreme Court in Six L's Packing Co. [v. Workers' Compensation Appeal Board (Williamson), 44 A.3d 1148 (Pa. 2012)] held that the McDonald test[4] applies to Section 302(b) of the Act and not to Section 302(a). . . . Further, it is clear that Section 302(b) of the Act is not applicable to this case, as Saladworks did not own or occupy the premises where Claimant was injured. Conversely, Section 302(a) recognizes class of statutory employers who [sic] are not in possession or control of the premises and use subcontractors for services that are a 'regular or recurrent' part of the business. . . . Although statutory employer status is most often seen in the context of construction cases, it can arise in other circumstances. . . . Therefore, we determine that cases involving franchisors and franchisees must be analyzed on a case-by-case basis under Section 302(a) in order to determine if the franchisor is a statutory employer in the event the franchisee is uninsured. . . . As such, the relationship between Saladworks, the franchisor, and G21, the franchisee, must be examined and a determination made whether Saladworks has contracted with G21 'to have work performed of a kind which is a regular or recurrent part of the business, occupation, profession or trade of such person' . . . .

. . . .

Based on the Franchise Agreement, Saladworks had a contractual obligation to ensure that G21 had the appropriate workers' compensation insurance coverage in place, which would have protected Saladworks from liability in this case and would have ensured that Claimant had coverage for his work-related injuries.

_____

[4] In McDonald v. Levinson Steel Company, 153 A. 424 (Pa. 1930), our Pennsylvania Supreme Court set forth five factors to be used to determine whether there is a statutory employer: 1) the entity is under contract with an owner or one who is in the position of an owner; 2) the entity occupies or controls the premises where the injury took place; 3) the entity entered into a subcontract; 4) the entity entrusted a portion of its regular business to the subcontractor; and 5) the injured party was employed by the subcontractor.

However, for whatever reason, Saladworks did not fulfill its obligation under the contract, and G21 was without workers' compensation insurance to cover Claimant's injuries.

The record evidences that Saladworks, as the franchisor, contracted with G21, as the franchisee, to have work performed which is a regular or recurrent part of Saladworks' business, occupation or trade. Specifically, Saladworks contracted with G21 to open a Saladworks restaurant facility in accordance with the 'unique system,' developed and owned by Saladworks, relating to 'the establishment, development and operation of restaurant facilities offering on-premises dining and carry-out services, featuring a variety of salads and other bread and beverage produced.' . . . . As such, Saladworks is a statutory employer under Section 302(a) of the Act, 77 P.S. § 461.

Furthermore, the purpose of the statutory employer doctrine is to place responsibility for payment on the first entity in a contractor chain when an injured employee's direct employer, the subcontractor, fails to secure workers' compensation insurance. . . . Our determination that Saladworks is a statutory employer supports that purpose as well as the humanitarian purposes of the Act. (Citations and footnote omitted.)

Board Opinion, September 10, 2014, (Opinion) at 3, 5, 9, and 10.[5]

---

[5] In the claim petition against UEGF, Claimant presented the deposition testimony of Zohar Stark, M.D. (Dr. Stark), a board-certified orthopedic surgeon and Claimant's treating physician. Dr. Stark first examined Claimant on July 11, 2011. Upon examination, Dr. Stark diagnosed Claimant with "sprain/contusion of both knees" which he related to the March 14, 2011, incident at work. Deposition of Zohar Stark, M.D., October 27, 2011, (Dr. Stark Deposition) at 9; R.R. at 29a. Dr. Stark last treated Claimant on September 12, 2011. His diagnosis of Claimant did not change. He recommended that Claimant undergo arthroscopic surgery on both knees to determine the source of his pain and to possibly alleviate it. Dr. Stark Deposition at 11-12; R.R. at 30a. Dr. Stark did not release Claimant to return to his time of injury job because he "cannot stand on his feet for that amount of time, for 20 hours a week, cannot walk out, he cannot push the garbage that he has to do." Dr. Stark Deposition at 12-13; R.R. at 30a.

**(Footnote continued on next page…)**

Saladworks contends that the Board erred when it reversed the WCJ's denial of the joinder petition.[6]

(continued…)

UEGF presented the deposition testimony of Eugene A. Elia, M.D. (Dr. Elia), a board-certified orthopedic surgeon. Dr. Elia examined Claimant on February 1, 2012, took a history, and reviewed medical records. After he conducted the examination, Dr. Elia found no objective findings of ongoing disability. Deposition of Eugene A. Elia, M.D., August 27, 2012, (Dr. Elia Deposition) at 12-13; R.R. at 192a-193a. Dr. Elia explained that Claimant would not squat but could get up and down from the examination table which was significant because "if somebody can get up and down from the examination table, I always find it interesting that they would not perform other activities when I would ask them to." Dr. Elia Deposition at 13; R.R. at 193a. Dr. Elia determined, based on the history, examination, and review of medical records, that Claimant suffered sprained knees on April 14, 2011, but that, as of the date of the examination, February 1, 2012, he had no objective findings of any ongoing disability or continuance of the injury. Dr. Elia Deposition at 19; R.R. at 199a. Dr. Elia testified within a reasonable degree of medical certainty that Claimant could return to his time of injury job. Dr. Elia Deposition at 24; R.R. at 204a.

With respect to the claim petition against UEGF, the WCJ granted the claim petition. The WCJ found Claimant credible and found Dr. Stark more credible than Dr. Elia. UEGF did not appeal this decision. Claimant and UEGF subsequently entered into a Compromise and Release Agreement:

> The UEGF has agreed to waive its subrogation lien against Claimant's third party recovery in return for a full and final compromise and release of Claimant's rights to payment of ongoing wage loss benefits as well as any potential claim for disfigurement or specific loss Claimant has in relationship to his 3/14/2011 work injury.

Compromise and Release Agreement by Stipulation pursuant to Section 449 of the Workers' Compensation Act, [77 P.S. §1000.5], August 5, 2014, Paragraph No. 10(1) at 2.

[6] This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation), 589 A.2d 291 (Pa. Cmwlth. 1991).

## II. Discussion.

Saladworks asserts that Section 302(a) of the Act, 77 P.S. §461, does not apply to franchisor/franchisee agreements and that Six L's Packing Company v. Workers' Compensation Appeal Board (Williamson), 44 A.3d 1148 (Pa. 2012) is clearly distinguishable and not applicable to the facts present here.

Section 302(a) of the Act, 77 P.S. §461, provides:

A contractor who subcontracts all or any part of a contract and his insurer shall be liable for the payment of compensation to the employes of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured its payment as provided for in this act. Any contractor or his insurer who [sic] shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from the subcontractor primarily liable therefor.

For purposes of this subsection, a person who contracts with another (1) to have work performed consisting of (i) the removal, excavation or drilling of soil, rock or minerals, or (ii) the cutting or removal of timber from lands, or (2) to have work performed of a kind which is a regular or recurrent part of the business, occupation, profession or trade of such person shall be deemed a contractor, and such other person a subcontractor. This subsection shall not apply, however, to an owner or lessee of land principally used for agriculture who is not a covered employer under this act and who contracts for the removal of timber from such land.

In Six L's, our Pennsylvania Supreme Court addressed the applicability of Section 302(a) of the Act in the context of whether a party bears liability for workers' compensation benefits as the statutory employer of an injured truck driver who was employed by an independent contractor. Six L's Packing

11

Company (Company) grew, harvested, processed, and distributed tomatoes and other produce. In April 2002, the Company contracted with F. Garcia & Sons (Garcia) to perform services for it. One of the tasks was the transportation of tomatoes between a warehouse in Shickshinny, Pennsylvania, and a processing facility in Crisfield, Maryland. Garcia employed Williamson[7] as a truck driver. Williamson was involved in a motor vehicle accident on a Pennsylvania roadway while he was transporting tomatoes owned by the Company from Shickshinny to Crisfield. Williamson was injured in the accident and petitioned for benefits. Garcia did not carry workers' compensation insurance. Williamson argued that the Company was his statutory employer under Section 302(a) of the Act and was secondarily liable for the payment of workers' compensation benefits. Six L's, 44 A.3d at 1150.

Before the WCJ, the Company presented evidence to establish that it did not own trucks or employ drivers but used independent contractors for its transportation needs. The Company also took the position that Section 302(a) did not apply because Williamson did not establish that (1) the entity was under contract with an owner; (2) the entity occupied or was in control of the premises where the injury took place; (3) the entity entered into a subcontract; (4) the entity entrusted a part of its regular business to the subcontractor; and (5) the injured person was an employee of the subcontractor. See McDonald v. Levinson Steel Company, 153 A. 424 (Pa. 1930). Because Williamson was injured on a public highway and not on premises owned or controlled by the Company, the Company took the position that the McDonald test was not met, and the Company was not a

---

[7] The opinion does not list Williamson's first name.

statutory employer. The WCJ found that the <u>McDonald</u> test was satisfied and that the Company was the statutory employer under Section 302(a). The Board affirmed though for a slightly different reason. The Board determined that <u>McDonald</u> pertained to a different section of the Act and, while it did apply to Section 302(b) of the Act,[8] 77 P.S. §462, it did not apply to Section 302(a). The Board reasoned that the Company contracted with Garcia to have work performed that was a regular part of the Company's business. As a result, the Board considered the Company a contractor under Section 302(a) and Garcia a subcontractor. Because Williamson was injured while in the employ of the Company's uninsured subcontractor, Garcia, the Board determined that the Company was Williamson's statutory employer and was secondarily liable for the payment of workers' compensation benefits. The Company appealed to this Court which affirmed. <u>Six L's</u>, 44 A.3d at 1152-1153. Our Pennsylvania Supreme Court affirmed and held that <u>McDonald</u> did not apply to Section 302(a) of the Act. <u>Six L's</u>, 44 A.3d at 1159.

Saladworks argues that neither Section 302(a) nor <u>Six L's</u> applies to the present case. Claimant worked for G21, a Saladworks' franchisee, which did

---

[8] Section 302(b) of the Act, 77 P.S. §462, provides:
Any employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of such employer's regular business entrusted to that employe or contractor, shall be liable for the payment of compensation to such laborer or assistant unless such hiring employe or contractor, if primarily liable for the payment of such compensation, has secured the payment thereof as provided for in this act.

13

not have workers' compensation insurance on the date of the injury. The Board determined that Saladworks fit the definition of a statutory employer under Section 302(a) because Saladworks contracted with G21 to perform work which was a regular part of Saladworks' business, occupation, or trade. Specifically, according to the Board, Saladworks contracted with G21 "to open a Saladworks restaurant facility in accordance with the 'unique system,' developed and owned by Saladworks, relating to 'the establishment, development and operation of restaurant facilities offering on-premises dining and carry-out services, featuring a variety of salads and other bread and beverage produced.'" Opinion at 9-10.

Saladworks argues that the Board misunderstood the nature of its business. As Maillie testified, Saladworks sells franchises to franchisees that open their own businesses using Saladworks' concept. Saladworks does not own the location. Saladworks does not know any of the employees, does not hire or fire employees, and has nothing to do with the day to day operation of the franchise. Saladworks does provide marketing assistance and the use of trademarks. Saladworks asserts that its regular or recurrent business is selling franchise licenses rather than the establishment, development, and operation of restaurant facilities.

Saladworks further asserts that the Board misunderstood its relationship with G21 because the franchisor-franchisee relationship is different than that of a traditional contractor-subcontractor. In the traditional contractor-subcontractor setting, the contractor hires a subcontractor to perform a specific role or task that aids in the overall goal of the contractor. For instance, a contractor building a new building may hire an electrician as a subcontractor to install the

14

wiring in the building. In contrast, the franchisor-franchisee relationship is different in that Saladworks' goal is to sell more franchises so that it can reap the benefit of franchise fees and royalty payments. Saladworks is not trying to sell more salads itself.

Once again, Section 302(a) of the Act, 77 P.S. §461, provides that a an entity must subcontract to have work performed that is a regular or recurrent part of its business in order to be considered a statutory employer:

> [A]ll or any part of a contract and his insurer shall be liable for the payment of compensation to the employes of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured its payment as provided for in this act. Any contractor or his insurer who [sic] shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from the subcontractor primarily liable therefor.
>
> For purposes of this subsection, a person who contracts with another . . . (2) **to have work performed of a kind which is a regular or recurrent part of the business, occupation, profession or trade of such person shall be deemed a contractor, and such other person a subcontractor.** (Emphasis added.)

Therefore, as Saladworks points out, the key question is whether the work performed by G21 under the Agreement was a regular or recurrent part of the business, occupation, profession, or trade of Saladworks. Under the Agreement, Saladworks granted G21 the right to use the mark "Saladworks" and to operate a Saladworks restaurant and to use the system established by Saladworks. In return, G21 agreed to pay a franchise fee as well as a weekly Continuing Services and

15

Royalty Fee of five percent of gross sales. G21 was responsible for purchasing or leasing a suitable site. G21 was required to provide Saladworks with a site survey, architectural plans and specifications. G21 was also required to periodically make reasonable capital expenditures to remodel, modernize, and redecorate the premises. G21 was required to pay one and one-half percent of its gross sales to Saladworks' advertising and development fund. G21 was also required to obtain different types of insurance coverage including workers' compensation. The Agreement also sets forth fifteen conditions of default which could result in termination of the agreement.

Also, as part of the agreement, Saladworks agreed to provide G21 with a copy of a confidential operations manual, training and assistance, and proprietary marks. Saladworks had approval of any advertising.

This Court must agree with Saladworks that its main business is the sale of franchises to franchisees that desire to use its name and "System" and marketing expertise. While Saladworks and G21 are connected through the Agreement, this Court is not prepared to adopt the reasoning of the Board. While Saladworks provides certain services to independent franchisees like G21, it is not in the restaurant business or the business of selling salads.

The situation here does not compare with that of Six-L's. In Six-L's, the Company hired Garcia to perform an essential part of its business: the transportation of produce from a warehouse to a processing facility. Williamson was injured performing this essential function. Here, in contrast, Saladworks was

16

in the business of selling franchises that used its unique system. Claimant was injured while working for a franchisee that was in the business of selling salads and other food products.[9]

Claimant was not an employee of Saladworks. The evidence established that G21 was Claimant's employer at the time of injury and was liable for the payment of benefits. It also appears that G21 lacked workers' compensation insurance. Therefore, UEGF is responsible pursuant to Section 1602(c) of the Act, 77 P.S. §2702(c).[10]

---

[9] Interestingly, the Board acknowledges that its opinion is contrary to its decision in Dorvil v. Prof Pizza It's a Domino's Pizza, A11-0670. In Dorvil, Anuel Dorvil (Dorvil) was injured in a motor vehicle accident while delivering pizzas for Professional Pizza, Inc. (Professional), a franchisee of Domino's Pizza, LLC (Domino's). Professional did not have workers' compensation insurance. Dorvil petitioned for benefits from the UEGF. The UEGF filed a joinder petition and alleged that Domino's, as the franchisor, was Dorvil's employer at the time of the work-related injury. The WCJ found that Dorvil suffered injuries in the accident and was disabled from employment. The WCJ denied the claim petition, granted the joinder petition, and found Domino's liable for the payment of Dorvil's benefits. Domino's appealed to the Board which reversed in part because the Board determined that a franchisor was not a contractor for purposes of Section 302(a) of the Act.

It is unclear why the Board reached the opposite conclusion in the present case which was decided approximately one year later.

[10] This section was added by the Act of November 9, 2006, P.L. 262. Section 2702(c) of the Act provides:

> The administrator shall establish and maintain the fund for the exclusive purpose of paying to any claimant or his dependents workers' compensation benefits due and payable under this act and the act of June 21, 1939 (P.L. 566, No. 284), known as The Pennsylvania Occupational Disease Act, and any costs specifically associated therewith where the employer liable for the payments failed to insure or self-insure its workers' compensation liability under section 305 at the time the injuries took place.

17

Accordingly, this Court reverses the order of the Board.


_____
BERNARD L. McGINLEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Saladworks, LLC and Wesco      :
Insurance Company,             :
           Petitioners     :
                           :
       v.               :
                           :
Workers' Compensation Appeal  :
Board (Gaudioso and Uninsured  :
Employers Guaranty Fund),     :    No. 1789 C.D. 2014
           Respondents    :

## **O R D E R**

AND NOW, this 6th day of October, 2015, the order of the Workers' Compensation Appeal Board in the above-captioned matter is reversed insofar as it reversed the WCJ's denial and dismissal of the Uninsured Employer Guaranty Fund's petition to join Saladworks, LLC.

 

_____
BERNARD L. McGINLEY, Judge