IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cargill Meats and Sedgwick      :
Claims Services,                 : No. 363 C.D. 2016
                                  : Submitted: October 7, 2016
               Petitioners  :
                                  :
             v.              :
                                  :
Workers' Compensation       :
Appeal Board (Heffner),      :
                                  :
               Respondent :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                   FILED:  December 29, 2016


Cargill Meats (Cargill) and its insurer, Sedgwick Claims Services (Insurer), petition for review of the order of the Workers' Compensation Appeal Board (Board) insofar as it reversed a workers' compensation judge's (WCJ) denial of the petition of the Uninsured Employers Guaranty Fund (UEGF) to join Cargill as Carl Heffner's (Claimant) statutory employer under Section 302(a) of the Pennsylvania Workers' Compensation Act (Act).[1]  We affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §461.  Section 302(a) states, in relevant part:

> A contractor who subcontracts all or any part of a contract and his insurer shall be liable for the payment of compensation to the employes of the subcontractor unless the subcontractor

**(Footnote continued on next page…)**

In March 2014, Claimant filed a claim petition alleging that he suffered a disabling cardiac injury on February 18, 2014, due to heavy exertion activity at the Cargill plant in Wyalusing, Pennsylvania while in the course and scope of his employment as a truck driver for Dunmore Repair & Sales (Employer). Employer filed an answer to the petition denying all of the material allegations raised therein.

In April 2014, Claimant filed a claim petition against UEGF alleging that Employer did not maintain workers' compensation insurance coverage and was not approved as self-insured at the time of the work-related injury. In June 2014, UEGF filed a petition to join Cargill as an additional employer.

Before the WCJ, Cargill stipulated that it: (1) has its own trucking distribution network; (2) uses its trucking distribution network to transport its products from, among other places, its Wyalusing facility; (3) routinely utilizes the services of outside trucking companies to handle its excess transportation needs for its products, including its Wyalusing facility; and (4) entered into a contract with Ronald Wickwire representing Employer to transport products from its Wyalusing facility. Reproduced Record (R.R.) at 173a, 185a.

---

**(continued…)**

primarily liable for the payment of such compensation has secured its payment as provided for in this act. Any contractor or his insurer who shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from the subcontractor primarily liable therefore.

For purposes of this subsection, a person who contracts with another . . . to have work performed of a kind which is a regular or recurrent part of the business . . . of such person shall be deemed a contractor, and such other person a subcontractor.

The contract was executed by Cargill as "Shipper" and Ronald Wickwire d/b/a Employer as "Carrier;" required Carrier to secure and pay for workers' compensation insurance and any other legally required insurance; and was "non-exclusive" in that Carrier was free to accept and transport freight from companies other than Cargill. R.R. at 174a, 179a-180a, 181a, 182a, 185a. Additionally, the contract stated that "Carrier shall be an independent contractor and shall not be or act as an agent or employee of Shipper," and that "Shipper exercises no control or supervision over the employees of Carrier and disavows any right to do so and Shipper in no way directs the operations of Carrier or the manner of its performance." *Id.* at 181a.

Claimant testified that on February 18, 2014, he was at Cargill's meat packing plant to drop his trailer and to pick up another for delivery to Boston. R.R. at 46a-47a. He stated that he parked at the loading dock next to another of Employer's drivers and that the other driver had trouble closing the doors of his trailer. *Id.* at 48a-49a. He testified that while helping to close the doors of the other truck, the other driver pulled away from the loading dock, which caused Claimant to run behind the truck while holding on to the doors. *Id.* at 52a. Claimant stated that he ran as fast as he could until he was out of breath and could not run any more, and that he began to feel ill after closing the doors of the other truck. *Id.* at 52a, 75a-77a. Claimant testified that he contacted Ron Wickwire, reporting that he thought that he was having a heart attack, and staff from Cargill went to his aid and contacted an ambulance. *Id.* at 54a-55a. He stated that he was transported by ambulance to a high school from which he was flown by helicopter to a hospital in Sayre where a stent was placed in his artery. *Id.* at 55a-57a. Claimant testified that he did not have any prior heart problems and that he

3

continues to receive cardiac treatment and suffer effects from his condition. *Id.* at 59a-61a, 62a, 63a-64a. He stated that he was supposed to undergo cardiac rehabilitation, but he lost his insurance because Employer went out of business shortly after his work injury. *Id.* at 61a-62a. Claimant also testified regarding the wages that he was paid by Employer.

Ronald Wickwire testified that he was Employer's sole owner and that it was a sole proprietorship. R.R. at 106a-107a. He stated that the business closed in March 2014, and that its workers' compensation insurance was cancelled for nonpayment the preceding November. *Id.* at 107a, 129a. He identified the contract with Cargill and stated that 60% to 65% of Employer's business was hauling for Cargill. *Id.* at 114a-116a. He acknowledged that a fictitious name filing with the Pennsylvania Department of State lists his wife, Twyla Wickwire, as Employer's owner. *Id.* at 142a-143a, 146a, 149a.[2]

Kevin Olsen, M.D., a board certified cardiologist testified by deposition. He stated that he began treating Claimant on February 24, 2014. N.T. 8/14/14[3] at 6. Dr. Olsen opined that, based on Claimant's history, physical examination, and the results of diagnostic studies and surgical interventions, Claimant suffered a work-related heart attack on February 18, 2014, in the course of his employment as a truck driver. *Id.* at 10-11. He diagnosed Claimant with preexisting high blood pressure and coronary artery disease, and stated that Claimant underwent surgery for the work-related heart attack, and that he performed a second angioplasty. *Id.* at 7, 10, 12. He opined that Claimant has

---

[2] UEGF also filed a petition to join Twyla Wickwire as an additional defendant, but that petition is not at issue in the instant appeal.

[3] "N.T. 8/14/14" refers to the transcript of Dr. Olsen's deposition testimony.

4

coronary artery disease and suffered the heart attack precipitated by extreme emotional and physical stress and duress at the time of injury. *Id.* at 8, 11, 17. Dr. Olsen further opined that Claimant is disabled and unable to work and will need to continue medications and possibly physical therapy or cardiac rehabilitation. *Id.* at 17, 18.

In his decision, the WCJ deemed Claimant's testimony credible and accepted it as fact. R.R. at 187a. The WCJ deemed Wickwire's testimony credible and accepted it as fact to the extent that he acknowledged Claimant's status as an employee of Employer and confirmed the contract between Employer and Cargill; the WCJ rejected his testimony that Twyla Wickwire was not Employer's owner. *Id.* The WCJ also deemed Dr. Olsen's testimony credible and persuasive and accepted as fact "that Claimant suffered an acute myocardial infarction on February 18, 2014 in the course of employment with [Employer] for which Claimant underwent surgery . . . and that Claimant remains disabled as a result of the February 18, 2014 incident." *Id.* Further, the WCJ found that Claimant was an employee of Employer on the date of injury earning an average weekly wage of $1,333.04 with a corresponding compensation rate of $888.69. *Id.*

However, with respect to UEGF's joinder petition, the WCJ found:

> The evidence of record viewed as a whole fails to establish that the joined Defendant, Cargill acted as Claimant's statutory employer. In arriving at this conclusion, this Judge notes that at all times up to and including the date of injury, [Employer] had entered into a non-exclusive contract for freight transportation services with Cargill. At all times relevant to these proceedings, [Employer] operated as an independent contractor. Cargill's relationship with [Employer] consisted exclusively of that of a Shipper and a Carrier.

R.R. at 187a (emphasis in original).

5

As a result, the WCJ concluded: the evidence establishes that Claimant suffered a compensable work-related injury in the nature of a heart attack while working for Employer on February 18, 2014, which resulted in ongoing medical treatment and temporary total disability from that day forward; based on those findings and the record evidence, Cargill does not meet the definition of a statutory employer; Employer is responsible for payment of benefits for Claimant's work-related injury and did not carry workers' compensation insurance as of the date of injury; and timely notice having been provided, UEGF is responsible for the payment of Claimant's temporary total disability benefits and reasonable and necessary medical costs and legal fees that were incurred. R.R. at 188a.

Accordingly, the WCJ issued an order: granting the claim and UEGF claim petitions; denying UEGF's joinder petition; and directing UEGF to pay Claimant temporary total disability benefits, all reasonable and necessary medical expenses, and litigation costs. R.R. at 189a.

UEGF appealed to the Board, arguing that the WCJ erred in failing to find that Cargill was Claimant's statutory employer.[4] The Board initially noted that in determining which entity is a statutory employer under Section 302(b) of the Act, 77 P.S. §462, courts generally apply the five-part test set forth by the Supreme Court in *McDonald v. Levinson Steel Co.*, 153 A. 424, 426 (Pa. 1930).[5]

---

[4] Claimant filed a cross-appeal, alleging that the WCJ erred in finding that the second procedure was performed to address his pre-existing coronary artery disease and not his work-related injury and erred in not ordering Employer to reimburse a valid subrogation lien of his private health insurer. However, these claims are not at issue in this appeal.

[5] The *McDonald* opinion states that the following five elements are essential to establish a statutory employer's liability: (1) an employer who is under contract with an owner or one in the position of the owner; (2) premises occupied by or under the control of such employer; (3) a

**(Footnote continued on next page…)**

6

However, the Board also noted that in *Six L's Packing Co. v. Workers' Compensation Appeal Board (Williamson)*, 44 A.3d 1148, 1157 (Pa. 2012), the Supreme Court held that the *McDonald* test does not apply to claims under Section 302(a). As the Board explained:

> Section 302(a) provides that a contractor who subcontracts all or any part of a contract will be liable for the payment of workers' compensation benefits to employees of the subcontractor, in the event the subcontractor fails to maintain workers' compensation insurance. 77 P.S. §461. ***Any entity in any industry, is considered to be a contractor for purposes of Section 302(a) if it contracts with another "to have work performed of a kind which is a regular or recurrent part of the business, occupation, profession or trade."*** *Id.* The party that is contracted with, in such a situation, is presumed to be a subcontractor. *Id.*
>
> Based on Cargill's Stipulation and the credible testimonial and documentary evidence of record, it is clear that contracting with outside trucking companies to haul its freight, including beef from the Wyalusing facility, is a regular and recurrent part of Cargill's business. In fact, transporting freight from its facilities is such a regular and recurrent part of Cargill's business that it has even secured its own trucking distribution network and prepared generic form contracts to use with the numerous outside trucking companies it uses to supplement the distribution network. Thus, it cannot be disputed that the work Cargill contracted with [Employer] to perform, *i.e.*, transport beef, is work that is a regular and recurrent part of Cargill's business. Accordingly, under Section 302(a) of the Act, Cargill is

---

**(continued…)**

subcontract made by such employer; (4) part of the employer's regular business is entrusted to such subcontractor; and (5) the claimant is an employee of such subcontractor.

> Claimant's statutory employer. 77 P.S. §461. *See also Six L's*, 44 A.3d at 1158.

R.R. at 212a-213a (emphasis added).

The Board rejected the WCJ's reliance on the non-exclusive contract between Cargill and Employer, explaining that "the substantial credible evidence of record establishes that Cargill maintains its own dedicated hauling fleet to transport its products," and that "Cargill routinely engages the services of outside transportation companies, like [Employer], to ship [its] excess production" because the dedicated fleet "is insufficient to meet Cargill's production capacity and subsequent shipping demands." R.R. at 213a. The Board determined that "[i]n light of these undisputed facts, the fact that the contract is non-exclusive does not support a conclusion that [Employer] is an independent contractor" and "supports the conclusion that subcontracting with third-party transportation companies is a significant, regular, and recurrent part of Cargill's business." *Id.* at 213a-214a.

The Board also rejected Cargill's argument that *Six L's* is distinguishable "because in *Six L's*, the trucker was hauling tomatoes to a process plant, while in the matter at hand, [Employer] was not delivering unfinished products between Cargill locations as part of processing the product, but was delivering a finished product to customers through a private hauler." R.R. at 214a. The Board explained that "[t]his is a distinction without a difference" as the Court in *Six L's* found that "because Six L's contracted with a trucking company to have work performed of a kind that was a regular and recurrent part of Six L's business, Six L's was the claimant's statutory employer under Section 302(a)," and that "[s]uch is the case here" because "Cargill contracted with [Employer] to have work performed of a kind that was a regular and recurrent part of its business . . . ." *Id.* Accordingly, the Board reversed that portion of the WCJ's decision concluding

8

that Cargill was not Claimant's statutory employer under Section 302(a) of the Act at the time that he suffered his work-related injury. *Id.* at 214a, 216a.[6]

Cargill's sole claim on appeal[7, 8] is that the Board erred in determining that it was Claimant's statutory employer under Section 302(a) at the time of his injury. Specifically, Cargill asserts that the holding in *Six L's* should be limited to cases where the statutory subcontractor performs services that are required to complete the manufacture of a finished product, which in this case is the slaughter of cows and the processing of beef. Cargill contends that Claimant was injured when he was in the course of transporting a finished product from Cargill's facility to its customers, which is not a regular, recurrent, or integral part of its business within the ambit of Section 302(a). We disagree.

Section 302(a) provides, in relevant part, that "[f]or purposes of this subsection, a person who contracts with another . . . to have work performed of a kind which is a regular or recurrent part of the business . . . of such person shall be deemed a contractor, and such other person a subcontractor." 77 P.S. §461. In *Six L's*, the Supreme Court held that where transporting produce from its warehouse to its processing facility was a regular and recurring part of a produce company's

---

[6] The Board also rejected Claimant's allegations of WCJ error and affirmed the remainder of the WCJ's decision. These portions of the Board's opinion and order are not at issue in this appeal.

[7] UEGF filed a notice of intervention in Cargill's appeal and a brief in support of the Board's opinion. Claimant did not file a brief in this appeal.

[8] This Court's review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Saladworks, LLC v. Workers' Compensation Appeal Board (Gaudioso)*, 124 A.3d 790, 796 n. 6 (Pa. Cmwlth. 2015), *appeal granted*, 135 A.3d 1016 (Pa. 2016).

9

business, and the company subcontracted with a harvesting and hauling company to perform these services, the produce company was secondarily liable as the statutory employer under Section 302(a) of a driver for the uninsured harvesting and hauling company who was injured in a vehicle accident. 44 A.3d at 1158-59. *See also Zwick v. Workers' Compensation Appeal Board (Popchocoj)*, 106 A.3d 251, 255 (Pa. Cmwlth. 2014) (holding that a licensed realtor whose business included construction rehabilitation work on residential properties for resale, who subcontracted with a worker to perform construction rehabilitation work, was a statutory employer under Section 302(a) when the worker was injured while installing flooring).

As noted above, in this case, Cargill stipulated that it has its own trucking distribution network; that it uses this trucking distribution network to transport its products from, among other places, its Wyalusing facility where Claimant was injured; that it routinely uses the services of outside trucking companies such as Employer to handle its excess transportation needs for its products including its Wyalusing facility; and that it entered into a contract with Employer to transport products from its Wyalusing facility. R.R. at 173a, 185a. Based on these facts, the Board correctly concluded that the transportation of the finished meat product to Cargill customers from Cargill facilities is a "regular or recurrent part" of Cargill's business[9] and that the Supreme Court's holding in *Six*

---

[9] Additionally, Claimant testified regarding Cargill's transportation of its finished product, in relevant part, as follows:

> Q.      Okay, well, I mean, I've never been a truck driver so –
> A.      Yeah, that was my primary duty to pick up this load in Pennsylvania and to deliver it in Boston at a certain point in time by a specific point in time.

**(Footnote continued on next page…)**

10

**(continued…)**

Q.      Right.  So you would – the trailer was backed up and all you did was take the cap part and hook it up to that trailer at Cargill right?

A.      When I got to Cargill I dropped my empty trailer in the lot. I had an empty.

Q.      Okay.

A.      So I dropped it up in the lot and then I went to the gate and checked in with the guard and went to the docks.

I backed underneath the trailer, hooked it up and then Mr. Brown showed up.

Q.      In terms of the place you were at Cargill I have Wyalusing?

A.      Wyalusing.

* * *

Q.      Was this your primary loading and unloading facility or did you have any others?

A.      Ah . . . that was primarily where I went to get loaded for beef.  Usually it was a drop and hook.

I would only have to drop my empty hook a loaded one and go.  On this particular night production was late and loading the beef patties that needed to go –

Q.      But you didn't load the beef into the trailer on that date at Cargill correct?

A.      No, I did not.

Q.      You were just waiting for Cargill employees to do that?

A.      Right.

R.R. at 71a-73a.

Likewise, Wickwire testified, in pertinent part, as follows:

Q.      What was your understanding of Cargill's business?

A.      My understanding of what, ma'am?

**(Footnote continued on next page…)**

(continued…)

Q. Of Cargill's business. What did they do?

A. Slaughtered cows for meat.

Q. And what was your part of Cargill's business? What were they asking you to do?

A. Haul the meat to the customers.

\* \* \*

Q. All you did was show up, they would fill up the truck and they would give you a packaging slip and you would deliver it, is that correct?

A. Yes.

Q. Then you would be paid in accordance with the contract when it was delivered; is that correct?

A. Yes.

\* \* \*

Q. It was your testimony, Mr. Wickwire, that Cargill had its own beef hauler; correct?

A. Yes. Uh-huh (yes).

Q. So they had their own dedicated hauler, and then they had enough work that they had to use you as an overflow hauler; is that correct?

A. Oh, they used many, many carriers.

Q. Okay. So they had their own dedicated hauler and then they used other companies to haul the beef as well; is that correct?

A. Yes, ma'am.

Q. Okay. And Cargill subcontracted that hauling work – hauling load work to you and other companies; correct?

A. Yes.

\* \* \*

**(Footnote continued on next page…)**

*L's* is not distinguishable. Because Claimant was injured while performing this "regular or recurrent part" of Cargill's business, the Board did not err in determining that the holding in *Six L's* governs this matter and that Cargill was Claimant's statutory employer under Section 302(a) of the Act. *See Six L's*, 44 A.3d at 1158-59 ("Viewing the statutory scheme as a whole, however, and employing the principle of liberal construction in furtherance of the Act's remedial purposes, we find it to be plain enough that the Legislature meant to require persons (including entities) contracting with others to perform work which is a regular or recurrent part of their businesses to assure that the employees of those others are covered by workers' compensation insurance, on pain of assuming secondary liability for benefits payment upon a default.") (citations omitted).

Accordingly, the Board's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

_____
**(continued…)**

[WCJ]: The objection will be sustained as to use of the term subcontractor, in its legal sense.

R.R. at 114a-115a, 126a, 143a-144a.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cargill Meats and Sedgwick
Claims Services,

Petitioners

v.

Workers' Compensation
Appeal Board (Heffner),

Respondent

:
:  No. 363 C.D. 2016
:
:
:
:
:
:
:
:
:
:
:

O R D E R

AND NOW, this 29th day of December, 2016, the order of the Workers' Compensation Appeal Board dated February 9, 2016, at No. A15-0406 is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge